Ormond W. HUTCHINSON, Appellant,

v.

TRI-STATE MOTOR TRANSIT COMPANY, Respondent.

No. 14345.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 7, 1986.

Motion for Rehearing or to Transfer
to Supreme Court Denied
Dec. 1, 1986.

Application to Transfer Denied
Jan. 13, 1987.

Norman E. Rouse, Collins, Webster and Rouse, Joplin, for appellant.

L.R. Buehner, Buehner & Buehner, Joplin, for respondent.

PER CURIAM.

Appellant Ormond W. Hutchinson, as the surviving husband of Mary Elizabeth Hutchinson, filed a claim under the Workers' Compensation Law against respondent Tri-State Motor Transit Company, her self-insured employer, seeking death benefits arising out of her death which occurred on July 28, 1983, in California. Mrs. Hutchinson was working under the provisions of the Workers' Compensation Law. The claimant and his wife were over-the-road truck drivers and drove as a team. Claimant was the owner of the tractor-trailer which he leased to Tri-State.

The Labor & Industrial Relations Commission entered a final award denying compensation. In so doing, the commission affirmed a prior award of the Administrative Law Judge which had also denied compensation. The findings of the commission included the following:

"The most persuasive, competent and substantial evidence leads the Commission to believe and conclude that Mrs. Hutchinson's untimely death was not clearly job related or work related but was the result of her underlying heart disease and her employment was merely a circumstance of her death and not a cause of it. There is a lack of persuasive evidence that the triggering cause of her death was job related."

Claimant appeals to this court from the final award of the commission, as authorized by § 287.495.[1]

Claimant's sole "point relied on" is stated as follows: "The commission erred in relying solely on the medical opinion of Dr. Corcoran. The opinion of Dr. Corcoran did not constitute sufficient, competent and substantial evidence in that it did not consider the effect of the activities engaged in by the claimant preceding her myocardial infraction. The opinion of Dr. Venter did, and was, therefore, the only sufficient, competent and substantial evidence to substantiate an award."

Mrs. Hutchinson was 59 years old when she died on July 28, 1983, at approximately 3:44 a.m. Since 1970 she had a history of high blood pressure, for which she was on medications under the care of Danu Chellappa, M.D., a Joplin, Missouri, physician. She was 5'7" tall, weighed 179 pounds, was overweight, and was a smoker. Her death occurred while she and her husband, as co-drivers, were taking a shipment of airplane seats from Los Angeles to the state of Washington.

Mr. and Mrs. Hutchinson left Joplin for Los Angeles on July 23 and she drove six hours on that date. She drove nine hours on July 24, five hours on July 25, and two hours on July 26. When she was not driving she was in the sleeper berth or otherwise "off duty." They arrived in Los Angeles at noon on July 27 and waited there while their unit was being loaded by other workers. When they left Los Angeles at 8 p.m. on July 27, Mr. Hutchinson was driving and he continued to do so until 1 a.m. on July 28. During that five-hour period Mrs. Hutchinson remained in the sleeper berth, sometimes awake and sometimes asleep. At approximately 1 a.m. they went into a cafe at Los Banos, California, where Mrs. Hutchinson had one or two cups of coffee. After a few minutes in the restaurant, Mrs. Hutchinson commenced driving the unit north on Interstate 5, a concrete four-lane highway, and Mr. Hutchinson went to sleep in the sleeper berth.

1. All references to statutes are to RSMo 1978, V.A.M.S.

Mrs. Hutchinson had not mentioned any problems to her husband when she commenced driving the last lap of the fatal trip, and he testified that when he went to sleep in the sleeper berth, "everything was all right," both with his wife and the unit. After Mr. Hutchinson had been asleep for approximately an hour and a half, during which time his wife had driven 90 to 100 miles and had passed through Sacramento on Interstate 5, he heard his wife yelling, "Honey, help me." He awoke as the unit was leaving the road.

Neither the tractor nor the trailer overturned. When Mr. Hutchinson succeeded in stopping the truck, his wife was unconscious and she never regained consciousness. He remained with her until she was transported by ambulance to Yolo General Hospital, Woodland, California, where she was pronounced dead at 3:44 a.m. An autopsy was conducted. According to the death certificate the cause of death was "A) Myocardial Infarction due to B) Severe Coronary Arteriosclerosis due to or as a consequence of C) Hypertrophy Heart and Fibrosis Left Ventricle Moderate."

Claimant Hutchinson testified that the tractor weighed 20,000 pounds and had manual steering. The trailer weighed around 11,000 pounds. He testified that the load weighed around 21,000 pounds but admitted on cross-examination that the bill of lading showed the load weighed only 5,000 pounds. He testified that the unit was "hard to steer—your shoulders get tired. The strain is on your shoulders and under your arms and your neck and your back get tired." The tractor had 13 forward gears and manual shifting. To shift gears the driver had to depress the clutch and it was necessary to keep the "r.p.m.s" between 1700 and 2150. It was necessary for the driver to monitor 13 gauges.

He also testified that it is more difficult to operate a tractor and trailer than an automobile. "You have to have a lot more space to maneuver in and out of traffic. You have to drive defensively. If you pass somebody you just can't whip in like you would with a car. There is strain and mental pressure any time you climb into the cab of a tractor and trailer and start down the road. Any truck rides harder than an automobile."

On cross-examination he said that the tractor was equipped with a special air ride seat which helped to reduce the trauma caused by a rough road. He did not know how much shifting of gears his wife had to do after she took over the driving. He said the tractor was equipped with a 22-inch steering wheel—larger than one on a passenger car—and that operating normally down the highway it is harder to steer than an automobile. He was not injured in the accident and as far as he knew his wife received no physical injuries.

John Venter, D.O., testifying on behalf of the claimant, stated that he specialized in internal medicine which includes heart disease. Claimant's attorney propounded to the witness a lengthy hypothetical question setting forth most of the circumstances previously described. One hypothesized fact included in the question was "in order to turn the wheel it took a significant amount of exertion on the head, arms, back and chest of the operator." Another fact hypothesized was that "as the driver she was sitting directly over the front wheels of the tractor and there was a significant amount of bouncing." The witness was also asked to consider the contents of the records of Yolo General Hospital, the autopsy report, and the death certificate.

Dr. Venter expressed his opinion that Mrs. Hutchinson "died from a sudden cardiac death event—most probably an arrhythmia of sudden onset which preceded her myocardial infarction." The witness also stated that he had an opinion "within a reasonable degree of scientific certainty" as to whether her activities of driving the tractor-trailer unit on that particular evening caused or contributed to her death."

His opinion was that "there is an extreme ... there is an extremely good ... a high probability that the stress and strain associated with driving a large tractor-trailer rig such as this at an early hour in the morning would have caused an imbalance

in the amount of oxygen demand by the tissues of the heart that could not be met from a physiologic standpoint because of the fact that she had severe narrowing of the coronary arteries and that this caused regional zones of ischemia, which is related to poor perfusion, which would then have caused a situation such as a lethal arrhythmia or disturbance of the conduction of the heart which would have resulted in loss of consciousness and infarction of the heart. Operation of the rig the night in question did set up a chain of circumstances which eventually ended in her death or contributed to her death."

On cross-examination the witness stated that he concluded that the stress of driving contributed to her myocardial infarction because she was driving and she had a myocardial infarction and there is. a certain stress in driving. He also stated that he relied on his own concept of stress created by truck driving as contrasted to any information he specifically had about the effect of stress on Mrs. Hutchinson in driving the unit. .

Francis H. Corcoran, M.D., testifying on behalf of the employer, stated that he specialized in the practice of cardiovascular medicine and that he had examined the records of Yolo General Hospital concerning Mrs. Hutchinson, the death certificate, the autopsy report, and the office records of Dr. Chellappa for the period from 1976 through May 1983.

According to Dr. Corcoran the pathologist's report, a part of the autopsy report, revealed "underlying heart disease.... She had evidence of severe blockages in all of the major coronary vessels and she also had evidence of enlargement of her heart which would suggest that she did have chronic high blood pressure, which had resulted in stretching of the heart, as well as increased weight of the heart muscle."

A lengthy hypothetical question propounded to Dr. Corcoran included the physical description of the tractor-trailer unit, its weight, the fact it did not have power steering, a description of its gear shifting procedure, and the fact that the driver was exposed to bouncing while seated over the front wheels.

Claimant's counsel made no objection to the hypothetical question on the ground that it should have hypothesized additional facts, nor did claimant's counsel seek to supplement the hypothesized facts.

Dr. Corcoran responded that Mrs. Hutchinson had a severe coronary artery disease and that the description of the circumstances surrounding her death and the findings after her death "are those that are typically associated with sudden cardiac death ... my opinion is that her sudden death was the result of her underlying heart disease and that the circumstances were just that, circumstantial, and not really related as cause and effect."

Other evidence offered by the employer showed that of the fleet of 600 tractors operated by Tri-State, only two had power steering, that Tri-State employed many women drivers, some of whom were smaller than Mrs. Hutchinson, and that they had made no complaints with regard to steering difficulties. The employer's evidence also showed Mrs. Hutchinson had driven this unit or similar ones for over 300,000 miles with a perfect safety record.

■ On this appeal this court must determine if the award of the commission is supported by competent and substantial evidence on the whole record. All of the evidence and legitimate inferences therefrom must be viewed in the light most favorable to the award. This court may not substitute its judgment for that of the commission. The award may be set aside only if there is no competent and substantial evidence to support it or if the findings of the commission are clearly contrary to the overwhelming weight of the evidence. Conflicts in the evidence are for resolution by the commission. This court must disregard any evidence which might support a finding different from that of the commission and that is true although a finding of the commission to the contrary would have been supported by the evidence. The commission is charged with the responsibility

of passing upon the credibility of all witnesses and may disbelieve testimony of a witness even if no contradictory or impeaching evidence appears. *Matthews v. Roadway Express, Inc.*, 660 S.W.2d 768, 769[1–4] (Mo.App.1983). (Citing authorities.)

When, as here, the right to compensation depends upon the acceptance of one of two conflicting medical theories, the issue is one of fact for determination by the commission and its finding will not be disturbed unless the commission acted unreasonably in accepting testimony which was not substantial or decided the issue contrary to the overwhelming weight of the evidence. *Greer v. Missouri State Highway Dept.*, 362 S.W.2d 773, 778[4] (Mo.App.1962); *Tebeau v. Baden Equipment and Construction Co.*, 295 S.W.2d 184, 189[3] (Mo.App.1956); *Sams v. Hayes Adhesive Co.*, 260 S.W.2d 815, 819[2] (Mo. App.1953). A finding of the commission consistent with either of two conflicting medical opinions will be upheld by this court if supported by competent and substantial evidence upon the whole record. *Brown v. Griesedieck Western Brewing Co.*, 250 S.W.2d 803, 809[2] (Mo.App.1952); *Williams v. International Shoe Co.*, 213 S.W.2d 657, 662[6] (Mo.App.1948); *Driemeyer v. Anheuser-Busch*, 153 S.W.2d 821, 825[2] (Mo.App.1941). Although the claimant presented testimony which, if it had been accepted by the commission, would have supported an award in his favor, the commission was not compelled to believe this testimony and was at liberty to reject all or any part of it which it did not consider credible and accept as true contrary evidence adduced by the employer. *Sams v. Hayes Adhesive Co.*, supra, 260 S.W.2d at 819[3, 4].

In *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781 (Mo. banc 1983), the supreme court abandoned the narrow construction of the term "accident" as used in § 287.020.2 and held that so long as an injury "is clearly job related" it is compensable.

The burden of proof is on the claimant to show the injury was caused by accident arising out of and in the course of his employment. *Staab v. Laclede Gas Co.*, 691 S.W.2d 343, 345[2] (Mo.App.1985); *Kinney v. City of St. Louis*, 654 S.W.2d 342, 343[1, 2] (Mo.App.1983). The injury must be job-related, *Wynn v. Navajo Freight Lines, Inc.*, 654 S.W.2d 87, 89 (Mo. banc 1983); *Westerhold v. Unitog-Holden Manufacturing Co.*, 707 S.W.2d 456, 458 (Mo.App.1986); *Ford Motor Co. v. Dickens*, 700 S.W.2d 484, 485 (Mo.App.1985); *Tibbs v. Rowe Furniture Corp.*, 691 S.W.2d 410, 412 (Mo.App.1985).

In *Wynn v. Navajo Freight Lines, Inc.*, 654 S.W.2d 87 (Mo. banc 1983), the supreme court held that an employee's death, occurring during the course of the performance of his usual duties, and caused by a work induced heart attack, was compensable. There the decedent sustained a massive heart attack while on his job and died on the way to the hospital. At p. 89 the court said:

"It is probable that in most cases of heart attack on the job, the claimant can produce evidence of job relatedness. But the trier of fact, as in this case, must be persuaded of this essential finding. Even though Wynn was in poor health, had a preexisting heart condition, did not take good care of himself, and might have succumbed to a fatal heart attack while off work, possibly caused by different sorts of stress, the right to compensation should exist if the actual triggering causes are found, on the basis of substantial evidence, to meet the 'job related' or 'work related' test of *Wolfgeher*."

In *Wynn* the employee's injury "was clearly job related" and his survivors were entitled to death benefits. In other heart attack cases the record has supported the award of the commission denying death benefits. *Raines v. City of St. Louis*, 711 S.W.2d 544 (Mo.App.1986); *Staab v. Laclede Gas Co.*, 691 S.W.2d 343 (Mo.App. 1985).

In *Staab* the employee, a dump truck driver, was observed standing on the running board of his truck. Moments later he was seen lying in the street, the victim of a fatal heart attack while on the job. There was medical testimony that the attack could have been brought on "by activities or other external causes" in which event, said the Eastern District of this court, the death would be compensable. There was also medical testimony that the attack "could reasonably be explained as a spontaneous event in the life of Staab's coronary artery disease." In that event the death was not compensable. In upholding the decision of the commission denying compensation, the court pointed out that possibly the commission could have drawn a different conclusion but that its award was not contrary to the overwhelming weight of the evidence and was supported by competent evidence on the whole record.

In *Raines* a maintenance worker suffered a fatal heart attack while performing his regular duties. Decedent had a preexisting heart condition but his survivors claimed that the precipitating or immediate cause of the fatal attack was the physical stress of turning a water main valve. The claimant's evidence, if believed, showed that the heart attack was work induced but the commission did not accept that evidence. In affirming the commission's denial of death benefits the court of appeals said, at p. 544:

> "Whether decedent's heart attack was induced by the stress of labor was a question of fact which the Commission resolved adversely to claimants.... The Commission's determination that decedent's heart attack was not work-induced is supported by the testimony of [the employer's] medical expert that decedent's heart attack was the result of the progression of his heart disease and 'not consequent to immediately preceding effort.'"

Also supporting the ruling of the Commission, said the court, was testimony that the work decedent was doing just before he died "was not particularly strenuous."

▮ The commission was not required to accept the testimony of Dr. Venter. In this court claimant makes an objection to the testimony of Dr. Corcoran which was not made when the testimony was offered. This court holds that there was sufficient competent evidence in the record to warrant the making of the award, § 287.490.-1(4), and that none of the other grounds enumerated in that statute which would authorize modifying the award, or setting it aside, exists. The final award of the commission denying compensation is affirmed.

All concur, except TITUS, J., recuses.