Daniel WEBBER, Employee/Appellant,

v.

**CHRYSLER CORPORATION,**
**Employer/Respondent.**

No. 59981.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 21, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 9, 1992.

Application to Transfer Denied
April 21, 1992.

Roussin & Roach, William E. Roussin, Chesterfield, for employee/appellant.

Evans & Dixon, James B. Kennedy, St. Louis, for employer/respondent.

AHRENS, Judge.

In this workers' compensation case, Daniel Webber (employee) appeals from the Final Award of the Labor and Industrial Relations Commission (the Commission) reversing the Award of the administrative law judge (ALJ) and denying compensation. We affirm the Commission's ruling.

Employee filed a claim for compensation from the Second Injury Fund alleging in his amended claim that "Due to job stress on the job, claimant has developed and exacerbated a spastic colon." Employee claimed injury to his "Colon, man as a whole; psychiatric overlay and nervous system" resulting from an "occupational disease" he contracted in "September 1987."

At a hearing before the Division of Workers' Compensation, employee testified that he began working at Chrysler in 1973. In 1979, while working at Chrysler, he began experiencing problems with bladder and bowel control. By September, 1987, while employee was performing assembly work for Chrysler, his condition had deteriorated such that he could not "stay out of the bathroom," and he was transferred to a job off the assembly line. Employee testified his foreman harassed him because he could not keep up with the new job. After approximately two months, employee advised his supervisors he could no longer do that job, and he stopped working.

Employee stated that between 1979 and 1987, he was harassed by other Chrysler employees who refused to allow him to use the restroom and who laughed at him when he defecated in his clothing. According to employee, he was embarrassed by his supervisors who called him derogatory names and made derogatory comments about his bowel control problems.

Dr. Ebrahim Amanat, a psychiatrist, testified by deposition on claimant's behalf. Dr. Amanat diagnosed employee as suffering from post-trauma stress disorder with delayed onset; co-dependent personality; ulcerative colitis, the symptoms of which can be affected by stress; severe depression; and severe suicidal ideation. Dr. Amanat also identified psychosocial stres-

sors including employee's marital difficulties and conflict with employee's co-workers. In Dr. Amanat's opinion, the job stress and harassment by co-workers caused employee's disability. Dr. Amanat rated employee's depression level disability at 75 percent and his behavioral disability at 55 to 75 percent. Dr. Amanat concluded employee is totally disabled and is unable to compete in the open labor market.

Dr. Wayne Stillings, a psychiatrist, testified by deposition on behalf of Chrysler. Based on Dr. Stillings' examination of employee, he diagnosed employee as suffering from no psychiatric illness. Dr. Stillings ruled out the diagnosis of a post-traumatic stress disorder and clinical depression. "Co-dependent personality," according to Dr. Stillings, is not an accepted diagnosis in the field. In Dr. Stillings' professional opinion, employee "is not in need of any psychiatric care as it relates to the conditions of his employment" and employee "is able to engage in gainful employment." Further, in Dr. Stillings' professional opinion, employee "did not sustain any degree of temporary psychiatric nor permanent partial psychiatric disability as a result of the conditions of his employment at Chrysler," and there is no causal connection between his work at Chrysler and the ulcerative colitis condition. Based on the findings of his research, Dr. Stillings' opinion is that no association exists between psychiatric illness and ulcerative colitis. Dr. Stillings testified it is "a well-known medical fact that ulcerative colitis is an intrinsic inflammatory response that the body mounts to its own bowel, and is not influenced by external factors...."

Following the hearing, the administrative law judge found employee sustained a compensable occupational disease. The ALJ further found employee was permanently and totally disabled, and unable to compete in the open labor market "as a direct and proximate result of the on-the-job stress endured by the claimant, which manifested itself in the physical condition of colitis as well as a psychiatric disability connected therewith...."

Upon review, a majority of the Commission was persuaded by Dr. Stillings' testimony that employee's condition is not work-related. Accordingly, the Commission reversed the ALJ's award and denied compensation.

Five of employee's six points allege the Commission's ruling was not supported by competent and substantial evidence, was against the overwhelming weight of the evidence, and was contrary to law, because (1) employee "proved that he had contracted an occupational disease arising out of and in the course of his employment"; (2) employee "proved by a preponderance of the evidence through his medical proof that the job stress, which took various forms, was the competent producing cause and the exacerbating cause of his disability"; (3) the ALJ "correctly concluded that the claimant was permanently and totally disabled by virtue of the medical evidence presented, by the fact that the employee proved that he was unable to compete in the open labor market, that the administrative law judge properly took into consideration all medical evidence including that of Dr. Amanat and Dr. Stillings and that the employee proved that his disability on a permanent and total basis was causally connected and the direct result of on-the-job stress"; (4) the ALJ's "finding of compensability was not erroneous as a matter of law for the reason that the concept of accident encompasses gradual and progressive injuries resulting from repeated exposure to on-the-job hazards"; and (5) "based upon the whole record and even considering the evidence in the light most favorable to the commission's findings, the commission could not have reasonably reached its ruling and result."

■■■ "Appellate review of a workers' compensation case is limited to reviewing the decision of the Commission, rather than that of the ALJ." *Dillon v. General Motors*, 784 S.W.2d 915, 916 (Mo.App.1990). We will affirm the Commission's decision if, after reviewing the entire record, the decision is supported by competent and substantial evidence. *Id.* "To that end, all evidence and inferences therefrom shall be

viewed in the light most favorable to the decision. Conflicts in the evidence are for the Commission to resolve, and we shall disregard any evidence which may support a different conclusion from that reached by the Commission." [Citations omitted.] *Id.* Further, the Commission "is charged with the responsibility of passing upon the credibility of all witnesses and may disbelieve testimony of a witness even if no contradictory or impeaching evidence appears." *Hutchinson v. Tri–State Motor Transit Co.*, 721 S.W.2d 158, 161–62 (Mo.App.1986).

 Section 287.067.1 RSMo (Supp. 1990) defines "occupational disease" and sets forth specific criteria to be met.[1] To establish a claim for occupational disease, "the claimant is required to prove by competent and substantial evidence that there is a recognizable link between the disease and some distinctive feature of the job which is common to all jobs of that sort." *Sellers v. Trans World Airlines*, 752 S.W.2d 413, 415 (Mo.App.1988). "There must be evidence of a direct causal connection between the conditions under which the work is performed and the occupational disease." *Id.* at 415–16.

 Employee reminds us of the supreme court's statement in *Wolfgeher v. Wagner Cartage Serv.*, 646 S.W.2d 781 (Mo. banc 1983) that "[a]ny doubt as to the right of an employee to compensation should be resolved in favor of the injured employee." *Id.* at 783. However, when "the right to compensation depends upon the acceptance of one of two conflicting medical theories, the issue is one of fact for determination by the commission and its

finding will not be disturbed unless the commission acted unreasonably in accepting testimony which was not substantial or decided the issue contrary to the overwhelming weight of the evidence." *Hutchinson*, 721 S.W.2d at 162; *Glenn v. General Motors Corp.*, 792 S.W.2d 55, 57 (Mo. App.1990). "A finding of the commission consistent with either of two conflicting medical opinions will be upheld by this court if supported by competent and substantial evidence upon the whole record." *Hutchinson*, 721 S.W.2d at 162.

 Although the testimony of employee's expert, if accepted by the Commission, would have supported an award in favor of employee, the Commission "was not compelled to believe this testimony and was at liberty to reject all or any part of it which it did not consider credible and accept as true contrary evidence adduced by the employer." *Id.* Dr. Stillings' testimony constituted competent and substantial evidence to support the Commission's determination that employee's condition is not work-related. Therefore, points one through five are denied.

Employee's sixth point asserts: "That the failure of [the Commission] to even consider appellant's motion to dismiss respondent's application for review was improper and against the weight of the law." In his argument, employee contends the Commission, "in rushing to overturn the ruling of the [ALJ], completely ignored Appellant's Motion to Dismiss the Application for Review filed before [the Commission] and failed to even mention it." This point is without merit. An "Order Denying Motion" entered by the Commission states,

---

1. Section 287.067.1 RSMo (Supp.1990) provides:

 "In this chapter the term 'occupational disease' is hereby defined to mean a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the diseases follow as an incident of an occupational disease as defined in this section. A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind upon consideration of all the circumstances a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to

have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workers would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not to have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

"After due consideration, the Commission orders that the said Motion to Dismiss be and the same is hereby denied." Thus, the record reflects the Commission considered employee's motion. Point six is denied.

The Final Award of the Labor and Industrial Relations Commission denying compensation is affirmed.

SMITH, P.J., and KAROHL, J., concur.