Jerry BALTZ, Claimant–Appellant,

v.

FRONTIER AIRLINES, Employer–Respondent.

No. 61520.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 8, 1992.

The Hullverson Law Firm, James E. Hullverson, Jr., St. Louis, for claimant-appellant.

Mark R. Rudoff, Ernie Brasier, St. Louis, for employer-respondent.

PUDLOWSKI, Judge.

Appellant/Employee Jerry Baltz sustained hearing loss in his left ear while working at the airport for Respondent/Employer Frontier Airlines. An administrative law judge awarded employee Baltz permanent partial disability compensation for the hearing loss. The Labor and Industrial Relations Commission reversed that award. We affirm the decision of the Labor and Industrial Relations Commission.

Employee Baltz began working for Central Airlines in the 1960's. His main responsibility was to guide aircraft to and from a parked position on the ramp or gate area of the airport. Baltz also loaded and unloaded airplanes, drove baggage trucks, and occasionally helped board passengers. He did all these jobs without ear protection and was frequently exposed to loud aircraft noise.

In December 1966, Baltz experienced a sudden loud noise episode while he was guiding a plane from park to a runway for departure. Baltz stood in front of a two engine Convair 600 turboprop jet during startup. After signalling the pilot to turn, the plane turned and buzzed within thirty feet of his left ear. Baltz was dizzied by the high pitch of the jet-driven propeller. He momentarily lost all hearing and stumbled to the ground. After crawling to safety, Baltz reported the incident to his supervisor. He also filed a written claim with the airline.

Shortly after this incident, Baltz was examined and tested by Dr. Marmer. The test results showed damage and hearing loss. The hearing eventually returned to Baltz's right ear, but not to his left ear. A few months later, Baltz contacted an attorney regarding this injury. According to Baltz, the attorney explained that he "would have to be away from the noise for a period of six months before [he] could file for Workmen's Comp."

Baltz began wearing ear plugs and ear muffs after this incident. From this point on, Baltz wore different grades of ear protection throughout his career. In October 1967 Baltz was assigned to the operations department, which was primarily an inside job where ear protection was not worn. Frontier Airlines purchased Central Airlines in 1968.

While working in operations, Baltz occasionally helped load planes out on the ramp even though his main inside duties were to accept freight and gauge the weights of planes. Baltz guessed that he encountered planes about once a week and always wore ear protection at those times. He also testified that there was never a period longer than a year when he did not work on the ramp. Baltz worked in operations until 1972 when he was transferred back to air cargo.

As part of a routine physical exam in May 1975, Dr. Lyman conducted hearing

tests on Baltz. Dr. Lyman found a 46% permanent hearing loss in the left ear, apparently a result of the 1966 incident. Baltz spent the remainder of his career with Frontier in air cargo out on the ramp.

Baltz's employment with Frontier ended on September 30, 1986. Thereafter he filed a Claim for Compensation alleging the date of incidence of occupational disease as six months later on approximately April 1, 1987. He felt that his hearing had been at the same deficit since the 1966 episode when his ear was buzzed.

Baltz had his hearing evaluated by the Central Institute for the Deaf in July 1987. It found that Baltz had 81% hearing impairment in the left ear and a binaural hearing impairment of 13.5%.

At the request of the employer and insurer, Dr. Hardy examined and tested Baltz. Dr. Hardy found a 78.5% hearing impairment in the left ear that he felt was progressive since 1975. Dr. Hardy surmised that the progressive hearing loss was due to some other phenomenon, such as an acoustic tumor, because the hearing in Baltz's right ear did not deteriorate over the time he worked for Frontier. Dr. Hardy requested that Baltz have a CAT scan or a MRI to investigate this possibility, but Baltz declined because of claustrophobia.

On April 3, 1991, an administrative law judge awarded Baltz permanent partial disability in the amount of 81% of the left ear, or $4,662.12, based on the combination of the traumatic blast and continued noise exposure Baltz experienced during his career at the airport. The employer appealed to the Labor and Industrial Relations Commission. On January 16, 1992, the Commission issued a Final Award Denying Compensation. It found that in October 1967 Baltz obtained an inside job which no longer required parking aircraft, and that he was "separated from the type of noisy work" that had precipitated his hearing loss. The Commission acknowledged that there was some evidence of progressive hearing loss in Baltz's left ear, but concluded, relying upon Dr. Hardy's report, that the hearing loss was not related to industri-

al noise exposure. Baltz appeals raising one point.

Appellate review of a worker's compensation case is limited to reviewing the decision of the Commission. Section 287.495, RSMo 1986. The Commission's decision will be affirmed if, upon review of the entire record, it is supported by competent and substantial evidence. *Sellers v. Trans World Airlines, Inc.*, 776 S.W.2d 502, 504 (Mo.App.1989). All evidence and inferences therefrom shall be viewed in the light most favorable to the Commission's decision. *Id.* Conflicts in the evidence are for the Commission to resolve, and we shall disregard any evidence which may support a different conclusion from that reached by the Commission. *Hutchinson v. Tri–State Motor Transit Co.*, 721 S.W.2d 158, 161 (Mo.App.1986).

Appellant Baltz argues that the Commission erred in denying compensation benefits on the basis that Baltz violated the statute of limitations when he failed to file his worker's compensation case sometime in 1968. Appellant asserts the Commission misconstrued the statute of limitations for occupational hearing loss. This statute provides:

No claim for compensation for occupational deafness may be filed until after *six (6) months separation from the type of noisy work* for the last employer in whose employment the employee was at any time during such employment exposed to harmful noise, and the last day of such period of separation from the type of noisy work shall be the date of disability.

Section 287.197.7, RSMo 1986 (emphasis added). Appellant contends the Commission misconstrued the meaning of "separation," "noisy work," and "harmful noise" within the circumstances of this case.

■ The Commission did not misconstrue the relevant words of § 287.197.7. Appellant urges a broad interpretation of these three phrases that depends on a fragmented reading of the statute. The statutory language must be read as a whole and applied within the context of the case. In light of the present facts, "separation from

the type of noisy work" means a change in the type of duties with an accompanying change in the type or level of noise, not the complete segregation of all airplane noise. Furthermore, the "harmful noise" phrase of the statute is merely descriptive of the type of employer or employment period for which one can file a claim; a period in which one is exposed to harmful noise. It does not condition the six month separation requirement, which is activated only by "separation from the type of noisy work." The Commission could find that appellant's transfer to an inside job in October of 1967, triggered the requisite six month "separation from the type of noisy work." The Commission's finding that the transfer to an inside job was sufficient separation from the previous type of noisy work was supported by substantial evidence. Appellant testified that his job on the ramp parking planes and unloading baggage was very noisy. Appellant testified that as a result of the assignment to an inside job he had different primary responsibilities involving the weight and balance of aircraft and not parking and loading of aircraft. He further stated that his duties were performed in an office located in the terminal and only occasionally was he required to go out onto the ramp. Appellant testified that there was no exposure to noise or that the noise from the planes was not uncomfortable, and that he did not go out to the ramp without ear protection. Appellant also stated that he was assigned to inside operations for five years.

Appellant also contends that the employer failed to provide any proof about the efficacy of appellant's hearing protection that would suffice to establish appellant was separated from the noisy work for at least six months. Notwithstanding the lack of evidence on efficacy of hearing protection,[1] there was substantial evidence detailed above, upon which the Commission based its finding that appellant was separated from the type of noisy work that precipitated his hearing loss.

 We also note that although appellant claimed to suffer an occupational disease for loss of hearing due to industrial noise exposure, there was substantial evidence to support the Commission's finding that the progressive hearing loss was not related to industrial noise exposure.[2] Appellant testified that his hearing was the same as its been since the 1966 incident, and since then he always wore hearing protection when he went onto the ramp. Dr. Hardy's medical report, upon which the Commission chose to rely, explained that the lack of hearing loss in the right ear convinced him that the progressive hearing loss was not from industrial noise exposure subsequent to the traumatic noise episode. The Commission's decision is supported by competent and substantial evidence and is, accordingly, Affirmed.

CRANDALL, P.J., and GRIMM, J., concur.

---

1. Interestingly, Respondent Frontier Airlines acknowledges, in its brief, the impracticality of obtaining this type of proof.

2. Moreover, the initial traumatic noise blast appellant suffered in 1966 would have been more properly compensable as an accident under § 287.120.1, RSMo 1986:

Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by *accident* arising out of and in the course of his employment. . . .

(emphasis added). Even though the accident resulted in hearing loss, it was not the result of "prolonged exposure to harmful noise in employment" envisioned by § 287.067.2 Appellant stated in his Claim for compensation that, "In 1966 he sustained an accidental noise blast in the workplace when the aircraft unexpectedly turned in his direction and revved." There is no six month waiting period for an accident claim under § 287.120.1. Appellant could have, therefore, filed his claim immediately after the incident.