Guy CUNNINGHAM, Respondent,

v.

LEGGETT & PLATT, Appellant.

No. 20836.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 24, 1996.

---

**2.** Rule references are to Missouri Rules of Civil Procedure (1996).

Greg B. Carter, John Mollenkamp, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for appellant.

Charles Buchanan, Joplin, for respondent.

MONTGOMERY, Chief Judge.

Leggett & Platt (Employer) appeals the decision of the Labor and Industrial Relations Commission (Commission) which awarded Guy Cunningham (Claimant) temporary total disability (TTD) from July 24, 1991, the day after his injury, until August 19, 1993, which was four months after his shoulder surgery. He was also awarded medical benefits for this surgery.

The Commission's award modified the award of the administrative law judge (ALJ). After a hearing the ALJ determined that Claimant had a 10 percent permanent partial disability at the level of the left shoulder and awarded benefits accordingly. The ALJ also denied the claim for shoulder surgery medical expenses after finding that "the injury and subsequent treatment, including an arthrogram fully one year after the release of Dr. Edwards and subsequent surgery, nearly eighteen months after the injury, to be too distant in time to credibly be causally connected to the events of July 23, 1991."

Employer contends on appeal that the award of TTD beyond May 1993 is unsupported by any competent and substantial evidence and that the entire award of TTD is contrary to the overwhelming weight of the evidence. Employer also contends that the award of medical benefits for Claimant's surgery is contrary to the overwhelming weight of the evidence.

There is no dispute that Claimant was injured while working for Employer. On July 23, 1991, Claimant was moving a compressed bundle of bed springs when he felt pain in his left shoulder. Employer sent him that day to Dr. Edwards for treatment. At that visit Claimant had a limited range of motion in his left shoulder.

Dr. Edwards saw Claimant again on August 12, 1991, and at that time he had a full range of motion in his shoulder, although with some pain. On August 16, 1991, Dr. Edwards' examination of Claimant revealed a full range of motion with slight pain. Records from that visit indicate Claimant was "able to pick up kids now." On August 20, 1991, Dr. Edwards found that Claimant's condition had improved and released him to return to work on August 26, 1991.

When Claimant returned to work that day, he was unable to lift or move his arm very well. Employer would not allow him to continue working.

Claimant's attorney arranged a visit for him with Dr. Griffith on November 8, 1991. Dr. Griffith's examination resulted in a permanent partial disability rating of 10 percent to the left shoulder. However, Dr. Griffith's examination did not rule out a rotator cuff tear. She recommended that an arthrogram be performed to determine that no such injury occurred. In her February 1992 deposition, Dr. Griffith testified that if an arthrogram is negative, a rotator cuff tear is still "possible, but not probable." She also testified that Claimant would have been able to do "some types of work" in November 1991.

Eventually Claimant saw Dr. Stringer, an orthopedic surgeon, in October 1992 for an arthrogram and an impingement injection test. Neither test showed a rotator cuff tear. Dr. Stringer opined that Claimant did not have such an injury at that time. He believed that Claimant was able to work in October 1992. However, Dr. Stringer agreed that the injection test he performed would not rule out a small incomplete rotator cuff tear. He further agreed that for Claimant to

"actually develop an actual tear through that area without trauma in a patient [Claimant's] age would be unusual."

In March 1993 Claimant was examined by Dr. Behrens. An injection test was positive for a rotator cuff tear. Dr. Behrens performed surgery on April 19, 1993, and repaired the rotator cuff tear. Dr. Behrens could not unequivocally say that this injury was caused by the July 23, 1991, accident. He was able to say that the "strong lifting that [Claimant] was doing in that activity could certainly have either caused or exacerbated that condition."

Dr. Griffith again examined and rated Claimant after his surgery. Her second rating was the same as her first. In her deposition after this examination, Dr. Griffith concluded that Claimant did not develop a new problem with his shoulder between November 1991 and April 1993. She also stated that Claimant should not have returned to work with Employer due to the possibility of reinjuring his shoulders. She did agree that Claimant could have done some jobs from November 1991 through April 1993. However, she believed that Claimant would have had great difficulty in finding employment due to his shoulder injury, lack of education and job skills. She testified that the medical expenses for the shoulder problems were necessary to treat Claimant's work-related injury and that the charges were customary and reasonable.

At the hearing before the ALJ on January 25, 1994, the evidence consisted of the testimony of Claimant, his wife and father, and Wilbur Swearingin, a rehabilitation counselor. The medical evidence came from the deposition testimony of Dr. Griffith and Dr. Stringer, along with various medical records, letters, and other documentary evidence.

Claimant, age 27, testified he was married and had three children. He attended high school through the eleventh grade and had no additional training. He had no job skills other than performing manual labor and was in good health prior to his injury. His employment experience consisted of working in a stockyard, working on a turkey farm, delivering rental merchandise, and driving a forklift. He testified about his physical problems

between the date of his injury and his surgery. He claimed that he was unable to do any work during that time period like he had done in the past. He testified he could only drive a stick-shift car with help from his wife because he could not steer with his left hand. He could not climb a ladder in normal fashion. He could not pick up his children or lift anything heavy. He denied telling Dr. Edwards that he could pick up his children or that he could move his arm through a full range of motion.

Claimant testified that during the period of time in question he looked for work as a farm laborer and applied for unemployment benefits. However, he did not receive unemployment benefits or take a job as a farm laborer. His family received welfare and food stamps during the period of time he was off work.

Claimant said he received no new injury to his shoulder between the date of his injury and his surgery. He testified that the surgery was successful and within three or four weeks afterwards, he was able to move his shoulder without pain. At the time of the hearing, Claimant had found a job and was working. He could not recall when he started the job but estimated that it was three to five months after the surgery.

The testimony of Claimant's wife and father was substantially similar to the Claimant's. Both of them corroborated Claimant's testimony that he was unable to work during the nearly two years he was unemployed.

Claimant's expert witness, Wilbur Swearingin, testified about Claimant's ability to work between July 23, 1991, and May of 1993. Swearingin reviewed the medical records of some of the doctors who examined Claimant and also gave a battery of tests to Claimant to determine his educational and vocational skills. Swearingin testified that it was his opinion that Claimant was temporarily and totally disabled from July 23, 1991, until May of 1993.

We review this case under the guidelines established by *Davis v. Research Medical Ctr.*, 903 S.W.2d 557 (Mo.App.1995). According to *Davis*, "in reviewing cases where the Commission has reversed the findings and award entered by the ALJ, the appellate

court engages in [a] two-step analysis...."
*Id.* at 570.

First, it examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the award is supported by competent and substantial evidence. At this stage, the court may disregard the credibility determinations of the ALJ because it is viewing the evidence in the light most favorable to the award. If there is such evidence, it moves on to the second step of the analysis to determine whether the award is against the overwhelming weight of the evidence. In this stage of the review, the court views the evidence in the light most favorable to the award but must consider all evidence in the record, including that which opposes or is unfavorable to the award.

*Id.*[1]

In our step two stage of review, we give due consideration to the ALJ's credibility findings concerning live witnesses when the Commission has found otherwise.

[W]hen the Commission's determinations as to the credibility of witnesses who gave live testimony before the ALJ are different from those made by the ALJ, the ALJ's contrary findings must be given due consideration, bearing in mind that evidence supporting a conclusion may be less substantial when an impartial, experienced ALJ who has observed the witnesses and lived with the case has drawn conclusions different from the Commission's.

*Davis* at 570–71.

▬ Turning to Employer's first point, we first dispose of its claim that no substantial evidence supports the award of TTD after May 1993. We agree.

The only evidence relating to the termination date of Claimant's disability came from him and Wilbur Swearingin. Claimant testified only that (1) he could use his arm without pain about three or four weeks after

surgery, and (2) he returned to work three to five months after surgery. Swearingin testified that Claimant was not employable in any occupation for which he was qualified by training, education, or work experience from date of injury to May 1993.

Based on this testimony the Commission found that "[a]lthough the exact date of post-surgical return to employment is not ascertainable from the record presented, the Commission accepts claimant's testimony estimating his period of surgical recovery to be four months." Thus the Commission found the date of Claimant's "return to employment" coincided with the termination date of his TTD.

The definition of total disability is the "inability to return to *any* employment and not merely the inability to return to the employment in which the employee was engaged at the time of the accident." *Crum v. Sachs Electric,* 769 S.W.2d 131, 133 (Mo.App.1989). The term "any employment" means any reasonable or normal employment or occupation. *Id.* Temporary disability awards are intended to cover a healing period. *Williams v. Pillsbury Co.,* 694 S.W.2d 488, 489 (Mo.App. 1985). Temporary total disability is only to be granted for the time prior to when the employee can return to work. *Id.* *Phelps v. Jeff Wolk Constr. Co.,* 803 S.W.2d 641, 645 (Mo.App.1991).

Claimant's testimony does not establish when he *could* return to any work. It only establishes when he *did* return to work. On the other hand, Swearingin testified that Claimant was healed and able to work in May 1993. Therefore, no substantial evidence supports the award of TTD to August 19, 1993. That portion of the award must be amended to terminate Claimant's TTD after May 19, 1993.

▬ The remaining and more difficult portion of Point I presents an extremely close call.[2] Employer candidly admits that sub-

---

1. In *Johnson v. Gregg,* 807 S.W.2d 680, 685 (Mo. App.1991), this Court said that "[t]he phrase 'weight of the evidence' means its weight in probative value, not the quantity or amount of evidence. The weight of the evidence is not

determined by mathematics; it depends on its effect in inducing belief."

2. The Commission's decision was not unanimous. The dissenting commissioner doubted

stantial evidence in the record supports the TTD award from date of injury to May 1993, which satisfies step one of the *Davis* review. Thus, Employer attacks the TTD award only under step two of *Davis*, claiming the award is clearly contrary to the overwhelming weight of the evidence. Mindful that "weight of the evidence" means its weight in probative value, and considering the ALJ's credibility determinations, we examine, per *Davis*, "the evidence in the light most favorable to the award." However, we consider all the evidence in the record.

As to the ALJ's findings, we observe that he did not specifically find the testimony of Claimant's live witnesses lacked credibility. He specifically found that the surgery was "too distant in time to credibly be causally connected" to Claimant's work-related injury. For that reason, he denied TTD benefits and medical expenses. In reaching that result, the ALJ did not rely on live witness testimony because the medical evidence came from deposition testimony and other medical records. Therefore, the Commission could make credibility determinations on the medical evidence equally as well as the ALJ. *Davis*, 903 S.W.2d at 573.

Employer's Point I asserts that the TTD award is contrary to the overwhelming weight of the evidence because all of Claimant's treating or examining physicians agreed he was able to work "at some jobs" and that Claimant looked for farm work after his injury, which is inconsistent with his TTD claim.

Employer points to Dr. Edwards' records showing Claimant was released to work in August 1991 and to Dr. Stringer's deposition testimony that Claimant was able to work. In addition, Dr. Griffith initially agreed that Claimant could do "some types of work" in November 1991.[3]

Claimant disputes that all his physicians agreed he was able to work. He believes the testimony of Dr. Griffith supports his TTD claim. For example, in Dr. Griffith's second deposition, she testified as follows:

> As I told him at the first time I saw him, I didn't think he should go back to work. And knowing what I know now, after two years, and having the surgery, and it showing the rotator cuff tear, and so on, I believe that was the correct procedure. And I would have, you know, I feel like— that that was right; that he shouldn't have returned to work.

> Q. And did you advise him that he should not return to work when you saw him on November the 8th of 1991?

> A. Yes, I did advise him of that.

Furthermore, according to Claimant, the testimony of Dr. Stringer is not conclusive concerning his ability to work. Dr. Stringer testified that he did not feel he had done enough testing or that he had enough information to render an opinion concerning Claimant's limitations to render an opinion about whether Claimant was able to work.

Unlike the ALJ, the Commission also was persuaded by the testimony of Claimant and Wilbur Swearingin concerning Claimant's ability to work. This testimony, along with the medical evidence, formed the basis for the Commission's TTD award.

After reviewing all the evidence and with consideration of the ALJ's findings, we conclude that no basis exists for disturbing the Commission's factual findings which are contrary to the ALJ's. While the Commission did not explain why it made a different call as to Claimant's live testimony, the medical evidence, in part, also supports Claimant's award. "The Commission's determinations

that Claimant's injury was work related and that any TTD award was appropriate.

**3.** In its argument, Employer takes issue with an inference made by the Commission that Claimant's job search was required by a welfare regulation, called "Future's," under the ADC program for an unemployed parent. Employer asserts that the Commission cannot take official notice of an administrative regulation, citing *Stegeman v. St. Francis Xavier Parish,* 611 S.W.2d 204 (Mo. banc 1981). Even if Employer is correct, which we do not decide, "an erroneous conclusion by an administrative agency is not grounds for reversal if the agency's decision is otherwise supported by competent and substantial evidence." *Cartwright v. Wells Fargo Armored Serv.,* 921 S.W.2d 165, 167 (Mo.App.1996). Therefore, we consider the evidence of Claimant's job search, regardless of the reasons for it, in our review of all the evidence in this case.

concerning conflicting medical opinions or conclusions are not disturbed on review unless they are against the overwhelming weight of the evidence." *Patchin v. National Super Markets, Inc.*, 738 S.W.2d 166, 167 (Mo.App.1987). After considering all the evidence, we are unable to say that the TTD award is against the overwhelming weight of the evidence or that the award is unreasonable.

In a close case, an appellate court is tempted to substitute its own judgment on the evidence for that of the Commission. We recognize that our review is otherwise. *Davis*, 903 S.W.2d at 565; *Garcia v. St. Louis County*, 916 S.W.2d 263, 266 (Mo.App. 1995). Furthermore, we observe the requirement that we liberally construe the provisions of chapter 287 with a view to the public welfare. § 287.800.[4] Thus, in interpreting this chapter, we resolve all doubts in favor of the employee. *Page v. Green*, 686 S.W.2d 528, 530 (Mo.App.1985). Point I is denied, except as indicated.

■ The remaining point attacks the award of medical benefits for Claimant's shoulder surgery. Employer alleges that the award is against the overwhelming weight of the evidence because the "credible medical evidence" showed that Claimant's injury had healed by August 1991, that he had no rotator cuff tear in October 1992, and the surgery repaired a condition not connected to Claimant's injury. We disagree.

Under the previous point, we upheld the Commission's TTD award. The award was based on Claimant's rotator cuff tear which caused his disability. Claimant was able to work after surgery repaired that condition. The medical benefits awarded relate to the cause of Claimant's disability. An employer is required to provide the necessary medical treatment to "cure and relieve" claimant from the effects of his injury. § 287.140.1. The record contained substantial evidence that the medical "fees and charges" for Claimant's shoulder surgery were "fair and reasonable" as required by § 287.140.3.

Further opinion regarding this point would have no precedential value. No error of law appears. The award of medical benefits is supported by substantial evidence and is not against the overwhelming weight of the evidence. The award of medical benefits is affirmed pursuant to Rule 84.16(b)(4) and (5).

We affirm the Commission's award of medical benefits and the award of TTD from July 24, 1991, through May 19, 1993. We reverse the Commission's award as to payment of TTD benefits after May 19, 1993, and remand this matter with directions that the Commission enter a TTD award in accordance with this opinion.

PARRISH and SHRUM, JJ., concur.

---

4. Statutory references are to RSMo 1994.