**Suzanne HALL, Claimant–Appellant,**

v.

**COUNTRY KITCHEN RESTAURANT, Employer–Respondent.**

No. 20985.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 30, 1997.

J. T. Magness, Timothy E. Gammon, Hulston, Jones, Gammon & Marsh, Springfield, for claimant-appellant.

David A. Childers, Rebecca J. Tatlow, Whiteaker & Wilson, P.C., Springfield, for employer-respondent.

GARRISON, Judge.

Suzanne Hall (Claimant) appeals the decision of the Labor and Industrial Relations Commission (Commission) in which it adopted the findings of the administrative law judge (ALJ) and affirmed the denial of her claim for workers' compensation benefits. We affirm.

Claimant was employed at the Country Kitchen Restaurant from March 1989 until

December 1992. According to Claimant's testimony, she fell at work a total of thirteen times during that period, to wit: twice in 1989, once in 1990, once in 1991, and nine times in 1992.

Two of those falls are the subject of this workers' compensation claim. On April 5, 1992, Claimant slipped on water and ice as she walked around the buffet bar and fell on her left side. On June 7, 1992, she again fell when she slipped on water and ice as she reached into a kitchen pantry at work. Although Claimant sought medical treatment from Dr. Roston following each of those falls, complaining of pain in her left hip, she apparently missed no work as a result of either fall.

Claimant's final fall at work occurred on December 11, 1992. Although that fall is not the subject of a claim now before this court, we mention it because there are references to it in the testimony of two examining physicians which will be discussed in this opinion.

Dr. Paff, a physician specializing in occupational medicine, examined Claimant on October 22, 1993 at the request of her attorney. He testified that when he was requested to examine Claimant, he was told only about the June, 1992 and December, 1992 falls. He was furnished with sparse medical records consisting of a few pages of records of Dr. Roston and a report concerning x-rays taken in June, 1992. The report indicated that Claimant then had a moderate amount of degenerative arthritis in the left hip, a condition which he said would have been present for more than several months.

Dr. Paff testified that Claimant was vague in providing a history concerning her injuries, and he acknowledged that a patient's history is important in arriving at an opinion about the cause of injuries. Claimant told Dr. Paff of having fallen nine times in 1992, but, consistent with the request for the examination, the only two specific falls she referred to, or which she related to her hip,

were those which occurred in June and December, 1992. While Dr. Roston's records referred to treatment for her hip on May 26, 1992, Claimant did not tell Dr. Paff about the April, 1992 fall. In fact, it was his understanding that Claimant claimed to be asymptomatic prior to the June, 1992 fall. She also gave him no history relating to the falls which occurred prior to 1992 involving her hip or buttocks, which Dr. Paff said would be significant information in trying to evaluate her condition and disability. Dr. Paff's report stated:

> [Claimant] is a 54–year–old lady who sustained a number of falls in the course of her employment in 1992, the last occurring in December of 1992. Patient sustained injuries allegedly to her left hip, right shoulder and left sacroiliac joint.[1] She is also noted to have mild degenerative changes in her low back area and moderate degenerative changes in her left hip. Other x-ray reports or x-rays are not available and I have essentially no medical records. Historically, the patient indicates that all of these injuries occurred as a result of her falls. I am unable to determine if that is accurate or not. It is my opinion, based on review of the records, history and physical examination, that she has a twenty percent (20%) permanent partial disability to her right shoulder at the 232 week level. She has a thirty percent (30%) permanent partial disability to her left lower extremity at the 207 week level, accounting for her hip and knee problem. She has a five percent (5%) permanent partial disability to her body as a whole as a result of her left sacroiliac joint injury at the 400 week level.
>
> It would be my opinion also that in determining her disability to the body as a whole that she has a forty percent (40%) permanent partial disability, adding all of the previous problems. The difficulty, of course, is determining whether all of these problems in fact arose out of her falls in

---

1. In his deposition, Dr. Paff attributed the shoulder and sacroiliac joint injuries to the December fall.

the workplace. She certainly has a predisposing problem to her left hip with degenerative arthritis and I would allow that to account for one-third (1/3) of the disability to her left lower extremity.

Dr. Paff also testified, with reference to his opinion in this case, that because of the lack of more detailed historical information, "an educated guess is a reasonable—is as reasonable a degree of medical certainty as anyone can come up with."

At the employer's request, Claimant was examined on March 1, 1994 by Dr. Hufft, an orthopedic surgeon. She gave Dr. Hufft a history of having fallen several times from June, 1992 to December, 1992, but did not tell him about the April, 1992 or earlier falls. Dr. Hufft diagnosed Claimant's condition as severe arthritis and aseptic necrosis of the left hip.[2] He described these conditions as "idiopathic in that we don't know the cause," but did give his opinion that they pre-dated and were not caused by the June, 1992 fall. He also expressed his opinion that they were not caused by any fall which might have occurred in April, 1992. Dr. Hufft concluded that Claimant did not sustain any permanent disability as a result of the falls between June and December, 1992. He also testified that if she fell in April, 1992, it did not cause any permanent disability.

The ALJ found:

Claimant has not sustained her burden of proving that either of the falls of April 5, 1992, or June 7, 1992, that are the subject matter of the claims presented in this hearing, caused the injuries and disabilities that she has. Dr. Paff could not do more than make an educated guess as to whether her condition was caused by any particular fall. Dr. Hufft gave the opinion that this was an idiopathic condition that was not caused by any of the falls. Therefore, after carefully reviewing all of the evidence, compensation is denied.

The Commission affirmed the ALJ and adopted her findings in a 2–1 decision.

The applicable standard of review is described in *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App. W.D.1995), where the court said:

The reviewing court may not substitute its judgment on the evidence for that of the Commission. The weight of the evidence and the credibility of witnesses are ultimately for the Commission. The court applies a two-step process designed to determine whether the Commission could have reasonably made its findings and award upon consideration of all the evidence before it. In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence. In doing so, it takes into consideration the credibility determinations of the Commission and, if those determinations as to witnesses who gave live testimony before the ALJ are different than those made by the ALJ, it also considers the ALJ's credibility findings as well as the reasons, if any are given, why the Commission differed with those findings.

*Davis* contemplates the applicability of this standard of review not only to cases in which the Commission reverses the findings and award of the ALJ, but also to those, as here, where the Commission affirms the ALJ. *Id.*

■ In Claimant's first point relied on, she contends that the Commission erred in af-

---

**2.** As opposed to Dr. Paff's testimony, Dr. Hufft testified that when he examined Claimant she had no problems with her shoulder and sacroili-ac joint, and that any problem she had with her left knee was caused by her hip.

firming the ALJ because it should have found competent and substantial evidence on the whole record establishing her entitlement to benefits because of her uncontradicted testimony that she fell at work, and the opinion of Dr. Paff that she suffered permanent partial disability as a result. As we interpret her point relied on and argument, the benefits referred to by Claimant are primarily those for permanent partial disability.

Both Dr. Paff and Dr. Hufft testified by way of depositions. According to Dr. Paff, all of Claimant's injuries, except her hip injury, were the result of the December fall, an occurrence which is not a subject of the claims before us. As to the hip, Dr. Paff attributed one-third of her disability to the preexisting condition, one-third to the June, 1992 fall, and one-third to the December fall. Dr. Hufft testified that Claimant had no shoulder or sacroiliac joint injuries, and that her knee problem was caused by the problem in her hip. He concluded that the condition of Claimant's hip was not caused by the falls, and that she sustained no permanent partial disability as a result of them.

Claimant argues that the aggravation of a preexisting condition may result in a compensable condition. We do not dispute the validity of this general premise. *See Miller v. Wefelmeyer*, 890 S.W.2d 372, 376 (Mo.App. E.D.1994) (holding that "a preexisting but non-disabling condition does not bar recovery of compensation if a job-related injury causes the condition to escalate to the level of disability"). While Claimant presented the testimony of Dr. Paff concerning the degree of disability associated with the preexisting condition versus that arising from the falls, the Commission was not compelled to believe it and could reject all or any part of it which it did not consider credible. *Hutchinson v. Tri–State Motor Transit Co.*, 721 S.W.2d 158, 162 (Mo.App. S.D.1986).

■ "The degree of disability resulting from an injury and preexisting conditions are questions of fact resolved by the Commission." *Carter v. Frito–Lay*, 913 S.W.2d 341, 343 (Mo.App. E.D.1995). "The decision to accept one of two conflicting medical opinions is an issue of fact for the Commission." *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 288 (Mo.banc 1995); *see also Duncan v. Springfield R–12 Sch. Dist.*, 897 S.W.2d 108, 113 (Mo.App. S.D.1995) (holding that "[w]here the right to compensation depends upon which of two conflicting medical theories should be accepted, the issue is peculiarly for Commission's determination").

■ The Commission chose to accept the testimony of Dr. Hufft on the issue of whether Claimant suffered any permanent partial disability as a result of the April or June, 1992 falls, rather than that of Dr. Paff, who said that the closest he could come to a reasonable degree of medical certainty in giving his opinion was an educated guess. It was well within its authority to do so. An appellate court defers to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony. *Johnson v. Denton Constr. Co.*, 911 S.W.2d at 288. "A finding of the [C]ommission consistent with either of two conflicting medical opinions will be upheld by this court if supported by competent and substantial evidence upon the whole record." *Hutchinson v. Tri–State Motor Transit Co.*, 721 S.W.2d at 162.

■ Claimant acknowledges that we are bound by the credibility determinations of the Commission, but seeks a reversal of the award on the theory that it is against the overwhelming weight of the evidence. As indicated in *Davis v. Research Med. Ctr.*, 903 S.W.2d at 565, even if supported by substantial evidence, an award may be reversed if it is clearly contrary to the overwhelming weight of the evidence.

In making a review on this basis, we consider the evidence in the whole record which opposes or is unfavorable to that which supports the award. *Id.* at 570. We are also mindful that "weight of the evidence" means its weight in probative value. *Cunningham v. Leggett & Platt*, 929 S.W.2d 953, 957 (Mo.

App. S.D.1996). Based on this record, however, we are unable to conclude that the Commission's award denying compensation benefits for the claimed permanent partial disability was clearly against the overwhelming weight of the evidence.

■ The argument section of Claimant's brief also refers to the denial of her claim for medical expenses arising from the two falls in question. At the beginning of the hearing before the ALJ, the parties stipulated that one of the issues for determination was whether the employer was obligated to pay past medical expenses of $149. Those expenses were not specifically referred to by the ALJ in her findings, or by the Commission in its award. Likewise, Claimant raised no issue about the denial of that part of her claim in her application for review by the Commission. That application raised issues concerning the ALJ's denial of the claim for permanent partial disability, and the failure to accept the testimony of Dr. Paff in that regard. No issue was raised before the Commission about the failure of the ALJ to award medical expenses. Since we review the award of the Commission, we will not convict it of error where the issue was not before it. *Meyer v. Superior Insulating Tape*, 882 S.W.2d 735, 739 (Mo.App. E.D. 1994).

Claimant's first point is denied.

■ Claimant's second point relied on is actually an extension of her first point. In it she contends that the Commission and the ALJ erred in not relying on her testimony and that of Dr. Paff, and in not resolving doubts in favor of her entitlement to benefits because of the provisions of § 287.800.[3]

■ We recognize that, pursuant to § 287.800, the workers' compensation law should be liberally construed in furtherance of the purpose of enabling employees to receive compensation for injuries arising out of and in the course of employment. *State ex rel. Doe Run Co. v. Brown*, 918 S.W.2d 303, 307 (Mo.App. E.D.1996). In *Gregory v. Lew-*

*is Sales Co.*, 348 S.W.2d 743, 747 (Mo.App. S.D.1961), this court acknowledged the requirements of § 287.800, but said:

> On judicial review, the inquiry is *not* whether a contrary conclusion might have been permissible [citation omitted] but whether, upon the entire record, the [Commission] reasonably could have made the findings and award under consideration. Unless those findings and award are clearly contrary to the overwhelming weight of the evidence and the legitimate inferences fairly and reasonably deducible therefrom, we are not authorized to interfere.

In *Freeman v. Callow*, 525 S.W.2d 371, 376 (Mo.App. S.D.1975), this court held that § 287.800 "neither impinges upon the function and right of the [Commission], as trier of the facts, to draw from the evidence such inferences and findings as may be fairly and reasonably permissible [citations omitted] nor authorizes allowance of a claim lacking an essential element required by law."

In *Tibbs v. Rowe Furniture Corp.*, 691 S.W.2d 410, 412 (Mo.App. S.D.1985), we held that even though § 287.800 has been interpreted to mean that all doubts are resolved in favor of the employee, it does not apply "to the extent of validating a claim lacking some essential element." There, we affirmed an award denying compensation for an emotional condition where the disputed element was causation of the disability. As in the case at bar, the Commission chose to believe the physician who testified for the employer.

We hold that, consistent with the above authorities, § 287.800 does not require a different result in this case. Claimant's second point is denied.

The award is affirmed.

BARNEY, P.J., and PREWITT, J., concur.

---

**3.** All references to statutes are to RSMo 1994. Section 287.800 provides:

All of the provisions of this chapter shall be liberally construed with a view to the public welfare, and a substantial compliance therewith shall be sufficient to give effect to rules,

regulations, requirements, awards, orders or decisions of the division and the commission, and they shall not be declared inoperative, illegal or void for any omission of a technical nature in respect thereto.