Juanita June SHEEHAN,
Claimant-Respondent,

v.

**SPRINGFIELD SEED AND FLORAL, INC., Employer-Appellant,**

and

**Florist Mutual Insurance Co., Insurer-Appellant.**

**No. 14991.**

Missouri Court of Appeals,
Southern District.

July 8, 1987.

Motion for Rehearing or Transfer
to Supreme Court Denied
July 31, 1987.

William D. Powell, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for employer & insurer-appellants.

Larry K. Bratvold, Springfield, for claimant-respondent.

HOLSTEIN, Judge.

Juanita June Sheehan ("Claimant") sought workers' compensation benefits as a result of having contracted pneumonia during her employment at Springfield Seed and Floral, Inc. ("Employer"). Following a hearing, her claim was denied by an administrative law judge. Claimant appealed the decision to the Industrial Commission. The Commission reversed the administrative law judge's decision and entered an award in claimant's favor.

There are two basic questions presented. The first is whether the evidence was sufficient for the Commission to find that the claimant suffered from an occupational disease as provided in §§ 287.063 and 287.067, RSMo 1978. The second issue deals with whether or not the Commission's award of medical expense was proper since claimant had sought medical treatment on her own and had never requested medical treatment or examination at the expense of the employer.

Our review is of the Commission's award, and only when that award is not supported by substantial evidence, or clearly contrary to the overwhelming weight of the evidence, do we disturb it. *Barr v. Vickers, Inc.*, 648 S.W.2d 577, 579 (Mo.App. 1983). The Commission is the judge of the credibility of the witnesses and an appellate court does not substitute its view of the facts for those found by the Commis-

sion if the Commission's findings are supported by sufficient, competent evidence. Section 287.495.1, RSMo Cum.Supp. 1984.

Claimant went to work for the employer as a clerk in September of 1980. Those duties continued until January of 1981, when she began to sack fertilizer. During the period of time that she was sacking fertilizer, she would use a protective mask which had filters. The dust from the fertilizer was the primary reason for using the mask. Beginning in March, she began to sack bulk seed. The seeds, fertilizer, and other material handled by claimant contained various chemicals, including fungicides, insecticides and a small amount of highly toxic rodenticides.

The only ventilation that existed in the room where she worked came from the filter on the air conditioning system, unless the doors were open both at the front and back. There was no water fountain on the premises. She drank from a water glass which she kept on the counter in front of her.

As employees transferred seed, fertilizer, or chemicals from bulk containers to smaller packages, dust would rise. The dust was constantly present, settling on and covering counters, shelves, bottles, jars, bags, and even in the glass from which claimant drank.

During the course of her employment in 1981, the claimant began to develop headaches and nausea during the day while working. The headaches would go away about 10:00 p.m. in the evening and did not occur on the days that she did not work. These symptoms continued to increase in severity to the point that claimant had arranged to seek medical treatment.

Finally, on August 14, 1981, with the onset of a high fever, she went to the emergency room of the hospital. She was treated by Dr. John Mihalevich. Dr. Mihalevich diagnosed her with having a "severe pneumonitis", or pneumonia. The doctor found her infection to be unusual in that she had no predisposing susceptibility factors which one would expect to find in a person with pneumonia, those factors being age, smoking, and previous respiratory problems. The only significant history which the doctor found was her exposure to dust and chemicals in the work place.

Dr. Mihalevich testified that the factor which was the most probable cause of claimant's illness was the dust in the work environment. While the doctor said he could not give an absolute opinion, he believed that the environmental factors in the work place were related to the illness which he diagnosed. On October 14, 1981, Dr. Mihalevich advised claimant not to return to her employment.

Employer argues that since pneumonia is an "ordinary disease of life", claimant has failed to establish a direct causal connection between the conditions under which the work is performed and the disease, which is the natural result of the exposure in the work place and which does not come from hazards to which employees are equally exposed outside of the employment. § 287.067.1, RSMo 1978. In support of its position, the employer cites questions posed to Dr. Mihalevich on cross-examination. He was asked if dust created by remodeling in the claimant's home could be related to her pulmonary problems and whether or not he believed her subsequent respiratory problems indicate she may have had some propensity toward respiratory problems. To both of these questions, he replied in the affirmative. Neither question hypothesized the dates or amount of exposure to dust from remodeling or the nature or severity of subsequent respiratory ailments. Neither of these questions were couched in terms of "probability", as were the questions which were posed on direct examination.

■ A claimant's medical expert must establish the probability that the disease was caused by conditions in the work place. *Welker v. MFA Central Co-operative*, 380 S.W.2d 481, 486 (Mo.App.1964). The claimant is not required to establish that the dust was the sole cause of her pneumonia, only that it is a major contributing factor. Barr v. Vickers, Inc., supra, 581. The mere "possibility" that other factors caused or contributed to cause the illness will not

necessarily defeat a claim based on occupational disease.

In addition, the evidence did not support any finding that there was extensive dust in the home environment comparable to that which existed in the work environment. On the contrary, the evidence demonstrated that the remodeling work was completed in June of 1981. Claimant's condition continued to worsen after the remodeling was completed. The pneumonia did not occur until August of 1981. The testimony of claimant also demonstrated that she had worked in a construction environment prior to working for the employer. During her prior employment, she had never suffered from the headaches and nausea which began while she was working in the dust-laden environment of employer's business. The Commission could properly reject the remote and speculative evidence that claimant's illness was the result of dust in the home. Employer's claim that there was no evidence establishing a causal connection between the disease and the work environment is without merit.

Employer's next argument is that claimant's unique susceptibility resulted in the pneumonia and, therefore, cannot be an occupational disease, citing *Bess v. Coca-Cola Bottling Co.*, 469 S.W.2d 40 (Mo.App. 1971); and *Sanford v. Valier-Spies Milling Co.*, 235 S.W.2d 92 (Mo.App.1950). Both cases are factually distinguishable. In the former case, the claimant had a pre-existing allergy which was shown to be the predominant cause of the disabling ailment. In the latter case, the disabling ailment, tuberculosis, had pre-dated the employment. Here there was no evidence of a pre-existing allergy or pneumonia.

The record here demonstrates that if any pre-existing condition existed, it was without symptoms and remains undiagnosed. The credible evidence supports a finding that the predominant cause of claimant's illness was dust in the work place, and the evidence does not support a finding of a significant, pre-existing condition of non-occupational origin. See *Gaddis v. Rudy Patrick Seed Division*, 485 S.W.2d 636, 639–641 (Mo.App.1972).

Employer's final point is that claimant selected her own medical providers and, therefore, it should not be held liable. § 287.140.1, RSMo 1978, provides in part:

If the employee desires, he shall have the right to select his own physician, surgeon, or other requirement at his own expense.

In general, only when an employer has notice that a claimant needs treatment or demand is made on the employer to furnish medical treatment and he neglects to provide needed treatment, will the employer be held liable for medical treatment for the employee. *Hawkins v. Emerson Electric Co.*, 676 S.W.2d 872, 880 (Mo.App.1984).

Implicit in the above rule is knowledge by the employee that he has suffered a job related disability. Where an employee does not know at the time that he or she receives medical treatment that he or she has suffered a compensable injury, and the employee contracts for medical services without the employer's knowledge, the employer is not relieved from liability for necessary medical services. *Beatty v. Chandeysson Electric Co.*, 238 Mo.App. 868, 190 S.W.2d 648, 656 (1945). Generally, a compensable injury under the occupational disease provision becomes apparent when an employee is medically advised that he or she can no longer physically continue in the suspected employment. *Moore v. Carter Carburetor Div. ACF Industries*, 628 S.W.2d 936, 941 (Mo.App.1982). The only evidence we have of when claimant was so advised was the physician's letter of October 14, 1981. All expenses allowed were incurred prior to that date. No issue is raised as to the reasonableness of the expenses. Employer is liable for such expenses.

The final award of the Commission is affirmed.

CROW, C.J. and GREENE, P.J., concur.

PER CURIAM.

By its motion, the employer seeks rehearing or transfer on two bases.

The first is that the claimant had failed to sustain her burden of proof because her physician had testified that the conditions in the work place were a "significant cause" of her illness rather than testifying that the conditions in the work place were a "major contributing cause" of her illness. Neither the brief nor the motion for rehearing suggest a difference in the meaning of the above-quoted terms and no authority is cited making such distinction. The first point is without merit.

The second is that the court overlooked or misinterpreted certain matters of fact. The facts suggested are the testimony by Dr. Mihalevich relating to claimant's illnesses subsequent to her hospitalization in 1981. After being discharged from the hospital in 1981, she was treated on three occasions for respiratory illnesses. The doctor testified as follows:

A. ... So, my feeling now would be that she may have some unique susceptibility to environment exposure which—in which her job may have been a causative or contributing factor ...

The doctor further testified on cross-examination:

Q. And do you feel that she had a propensity [toward respiratory problems] in August of '81?

A. I think in retrospect that's probably the case.

From the above quotes, the employer attempts to argue that claimant had some condition which predated her employment which began in 1980. The import of the doctor's testimony is not that the claimant's present susceptibility to respiratory diseases existed prior to her employment, but that the susceptibility was the *result* of her employment. The second point is without merit.

The motion for rehearing is overruled and the application for transfer is denied.

All concur.