**Janice SELBY, Appellant,**

v.

**TRANS WORLD AIRLINES, INC., Respondent.**

**No. WD 45216.**

Missouri Court of Appeals, Western District.

April 21, 1992.

George G. Allen, Kansas City, for appellant.

Thomas Clinkenbeard, Kansas City, for respondent.

Before LOWENSTEIN, C.J., Presiding, and SHANGLER and SMART, JJ.

LOWENSTEIN, Chief Judge.

This workers' compensation appeal pivots on whether the claimant's brain damage was attributable to a fall she suffered on the job. On December 23, 1987, the appellant who was a flight attendant for Trans World Airlines (TWA) fell in a jetway as she was preparing to work a flight from San Antonio, Texas to St. Louis. She received a gash on her forehead but did not lose consciousness, and after a thirty minute delay and worked the flight to St. Louis. Her claim is for serious organic brain damage and atrophy stemming from the fall.

There is no question of present atrophy following organic brain damage in Ms. Selby. The effects of this progressive brain atrophy are: difficulty in handling

unexpected situations, insensitivity to others' needs, memory problems, disorientation, loss of eye-hand coordination, bizarre or "spacey" behavior and feelings of persecution. Selby is currently suffering all these symptoms, and her claim is based upon manifestation of these symptoms within 90 days of the fall.

The several medical experts agreed Selby's condition may be caused by trauma, drug or alcohol abuse, venereal disease, Alzheimer's or unknown reasons. However, the evidence as to causation was conflicting. Administrative Law Judge Magruder, and the Industrial Commission were persuaded by the employer and insurer's medical evidence which was the testimony and opinion of Dr. Dewey Ziegler, Chief of Neurology at the Kansas University Medical Center. The timing of the appearance of symptoms of this brain syndrome were determined to be important in rendering an opinion as to causation. Ziegler examined and tested Selby from mid-April to mid-August 1988. He determined she had mild to moderate atrophy, but had never known that condition to develop in less than ninety days from trauma. He testified this brain process cannot result in as sudden or severe a defect as was present in Selby. He also said for trauma (*i.e.* the fall) to cause this syndrome he would expect to find a period of unconsciousness or skull fracture—neither of which were in the case at bar.

The award for the employer and insurer was based on the finding of the brain disease symptoms predating the fall, and on Dr. Ziegler's opinion that the fall did not cause the disease. The trier of fact, the Commission, found persuasive documentary and testimonial evidence of pre-fall symptoms by focusing on Selby's job performance with the airline following her March, 1986, hire. Passengers, peers and supervisors had filed reports prior to December 23, 1987, which match symptoms of the disease for which claim is now made. Summarized, there was evidence starting in December, 1986, of her forgetting safety and operating procedures, being inattentive, and failing to follow instructions, all resulting in her being assigned to a remedial retraining program in April, 1987. These reports claimed she was unfamiliar with the aircraft, could not remember the order to serve airplane food and drink, and to a passenger seemed "preoccupied, out to lunch." Selby admitted to a co-worker, "she couldn't see (in her mind) how the service flow went this was why she forgot. No visualization recall." The finding of problems attributable to the disease being exhibited prior to the fall was supported by competent and substantial evidence.

Selby disputes the ruling for the employer, stating that her evidence from psychologist Jan Roosa and Dr.'s Epp (a psychiatrist) and Abrams as to the fall causing the brain damage should have been accepted. She discounts the pre-accident airline reports as being made by employees who had harassed her or had an axe to grind with her. She claims problems with reasoning, remembering and following work instructions started after the fall. Yet her medical experts did testify, without knowing of the pre-fall TWA records, that if symptoms preceded the fall, their opinions would be different.

■ All fact questions, the weight of evidence and resolution of conflicting evidence are for the Commission, and if its award is supported, as here by competent and substantial evidence, the decision must be affirmed. *Saidawi v. Giovanni's Little Place*, 805 S.W.2d 180, 182 (Mo.App.1990). Viewed in a light most favorable to the findings, and despite evidence to the contrary, the award on the sufficiency question is affirmed. *West v. Poster Const. Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991).

■ As to medical causation this court said in *Brundige v. Ingelheim*, 812 S.W.2d 200, 202 (Mo.App.1991):

Medical causation, not within common knowledge or experience, must be established by scientific or medical evidence showing the cause and effect relationship between the complained of condition and the asserted cause.

\* \* \* \* \* \*

"A claimant's medical expert must establish the probability that the disease was caused by conditions in the work place." *Sheehan v. Springfield Seed & Floral, Inc.,* 733 S.W.2d 795, 797 (Mo. App.1987).

The point is denied.

The next point raises a question about the Commission relying on evidence from TWA's personnel files on Selby to support a finding that the manifestations of the disease predated the December, 1987, fall. As stated earlier, the Commission as fact finder could rely on competent evidence introduced at the hearing. What the claimant really argues here is this evidence should have had little weight since it was not revealed prior to trial to any of the medical experts, including Dr. Ziegler. It is not a function of an appeals court to weigh the evidence. In any event, Ziegler clearly stated Selby's prior record had nothing to do with his opinion as to the cause of the brain disease. He felt it would have taken a longer period of time from the fall for the disease to progress to show the symptoms Selby exhibited within three months of the accident. In addition, he doubted the trauma from the fall was sufficient to even start the disease. The evidence in question did not go to bolster the employer's case, but to detract from the conclusions of the employee's experts. This point is denied.

Finally, Selby asserts prejudicial error resulted when the court allowed employer and insurer's exhibits relating to a 1980–82 discrimination suit against a former employer and a complaint against another former employer in 1979–80. The claimant's work record and history were relevant based on the critical determination to be made as to when the symptoms of the disease started. Even if not admissible, there is no showing the Commission relied on these two Selby lawsuits in reaching this decision.

The judgment is affirmed.