George F. KELLEY,
Claimant/Respondent,

v.

BANTA & STUDE CONSTRUCTION
CO., INC., Employer/Appellant,

and

Traveler's Property & Casualty
Company, Insurer/Appellant.

George F. Kelly, Claimant/Respondent,

v.

Banta & Stude Construction Co.,
Inc., Employer/Appellant,

and

American States Insurance
Co., Insurer/Appellant.

Nos. ED 74995, ED 75001.

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 24, 1999.

Daniel Steigerwald & John Robert Geiss, St. Louis, for Banta & Stude Construction Co., Inc. and Traveler's Property & Casualty Company, appellants.

Brian Michael McInnis & John P. Palombi, St. Louis, for Banta & Stude Construction Co., Inc. and American States Insurance Co., appellants.

Ray A. Gerritzen, St. Louis, for George F. Kelley, respondent.

KAROHL, Judge.

We review two appeals of Banta & Stude Construction Company (employer) from temporary or partial awards entered by the Labor and Industrial Relations Commission (Commission) on claims filed by George F. Kelley (employee) in September 1995 and February 1997. The 1995 claim was amended by two amended claims. The claims were tried together but not consolidated. The 1995 claim involved allegations of an accident in December 1993 or an occupational disease which disabled employee on that date. The 1997 claim involved only allegations of an accident as the cause of disability. We have jurisdiction because employer denied all liability for medical treatment and disability compensation for osteoarthritis effecting employee's hips. *Cahall v. Cahall,* 963 S.W.2d 368, 371 (Mo.App. E.D.1998).

### The Claims

The original and first amended 1995 claim alleged an accident on December 27, 1993 and injuries to the back, *right* hip and knee with aggravation and activation of preexisting osteoarthritis of the *right* hip

and lower back and disc disease in the lower back. They were filed on September 5, 1995 and October 4, 1995. Answers were filed by employer and its then insurer, Aetna Casualty and Surety Company (now Traveler's Property and Casualty Company). On November 12, 1995, employer changed carriers and was thereafter insured by American States Insurance Company. On June 6, 1996 employee filed a second amended claim which added allegations of occupational disease since 1972 "due to years, up to and including the present time, of [doing hard work as described]." The second amended claim also alleged the accident affected "both hips" and "aggravation and activation of pre-existing osteoarthritis of *both* hips and low back and disc disease in low back and osteoarthritis itself." (Emphasis added). On June 19, 1996, employer and Traveler's filed an amended answer admitting injury to the lower back and knee but denying liability for occupational disease.

The February 1997 claim against employer and American States alleged an accident on January 22, 1997 and injuries to the back, *both* hips and right leg. The claim did not allege occupational disease and, was never amended. However, near the end of the hearing, employee asked for leave to amend his claim. The Administrative Law Judge (ALJ) did not rule on the motion. He considered the motion for leave to amend but made no ruling because of the awards made in the 1995 claim. He suggested employee should amend to add allegations of occupational disease before further consideration of the 1997 claim.

## The Hearing

The ALJ tried both claims in one hearing. Employee sought a temporary award for hip replacement of both hips. He is afflicted with severe osteoarthritis of both hips. Traveler's contested employee's theories of the 1993 accident or the work caused hip disease. American States contested employee's theory that the 1997 accident caused only hip disability. No one questioned the medical necessity for total hip replacement of both hips for employee, who was 54 years old at the time of the hearing.

## The Partial Awards

In the award on the 1995 claim, the ALJ determined:

21. Medical treatment for right hip ordered against Travelers Indemnity Company. See Findings. Medical treatment for left hip against American States Insurance Co. See Findings.

In the award on the 1997 claim, the ALJ entered no award for medical treatment.

## Administrative Law Judge's Findings of Fact

**I. The 1995 accident and disease claim defended by employer and Traveler's.**

The ALJ entered separate, partial awards. With respect to 1995 claim, we summarize his findings as follows:

1. Employee worked for employer from 1972 to 1976 and from 1980 to 1997 as a laborer.

2. On December 27, 1993 he was injured when he slipped and twisted his body while at work.

3. On December 28, 1993 Dr. McAllister treated him for "significant osteoarthritis of the right hip." His impression was "lumbar facet syndrome and osteoarthritis of the right hip."

4. He returned to work in February 1994 but continued to experience pain in his back, right hip and leg.

5. In August 1995 he returned to Dr. McAllister. Dr. McAllister found he had "*left* hip arthritis to a lesser degree, but it's certainly progressing." (Emphasis added). Surgery on the right hip was scheduled. Traveler's declined to pay for it, and it was cancelled. The original compensation claim was filed in September 1995.

6. On October 4, 1995 Dr. Perry, an orthopedic surgeon, examined him. Dr. Perry noted employee "had severe arthritis which had worsened *during the previous year by his heavy work.*" X-rays "disclosed severe osteoarthritis of the right hip *and* also osteoarthritis of the *left* hip." (Emphasis added).

7. Dr. Perry referred him to Dr. Sutherland, also an orthopedic surgeon. On November 7, 1995 Dr. Sutherland found osteoarthritis in *both* hips, more advanced on the right. He opined the bilateral osteoarthritis was not work related, but the 1993 injury could have aggravated the condition.

8. Prior to January 22, 1997, he saw two additional orthopedic surgeons, Dr. Maloney and Dr. Leuke.

9. On January 22, 1997 he was injured when he slipped in the mud while carrying concrete forms.

10. On January 24, 1997 he was examined by Dr. Koreckij, an orthopedic surgeon. He diagnosed "lumbar sprain-strain with exacerbation, possibly underlying lumbar arthrosis." He found no direct relationship between his occupation and arthritis in the *hips*. His X-rays "indicated obviously arthritic *hips*." (Emphasis added).

11. Both hips were asymptomatic before December 22, 1993.

12. The accidents in 1993 and 1997 did *not* cause, aggravate or accelerate the right hip osteoarthritis.

13. The left hip osteoarthritis was not diagnosed until August 24, 1995 and it was not caused, aggravated or accelerated by the 1993 accident.

14. The January 22, 1997 accident did not cause, aggravate or accelerate the left hip.

On the alternative occupational disease claim the ALJ found:

15. Dr. Perry testified employee had a predisposition to osteoarthritis and his (21 of the last 25) years of heavy work aggravated this predisposition.

16. Dr. Perry's testimony supports a finding that the years of heavy work was a "substantial factor both in causing [employee's] bilateral hip osteoarthritis and in accelerating the pathologic progress." Furthermore, "Dr. Perry has opined that [employee's] work was more than 'a substantial factor' in causing his arthritis."

**II. The 1997 accident claim defended by employer and American States Insurance Co.**

We will not repeat the findings of fact also made in the award for the 1995 claim. We summarize the ALJ's findings as to the 1997 claim as follows:

1. On January 22, 1997 employee was injured at work.

2. On January 24, 1997 Dr. Koreckij examined employee. He diagnosed employee as having "lumbar sprain-strain with exacerbation, possibly underlying lumbar arthrosis."

3. On June 18, 1997 Dr. Leuke, an orthopedic surgeon, examined employee. He found severe degenerative joint disease in the *hips*.

4. Dr. Perry's opinion on causation of occupational disease, previously noted, applied to both the 1993 and 1997 events.

5. The 1997 accident did *not* cause, aggravate or accelerate the left hip arthritis.

6. If employee files an amended claim alleging occupational disease, it would suffice to thereafter decide at a future hearing pertaining to these claims whether such amended claim relates back to February 6, 1997.

*Appeal of Employer and Traveler's Property and Casualty Company*

Traveler's argues on appeal that the Commission erred: (1) in making any award for medical care against Traveler's because when employee was last exposed to the risk of occupational disease of both

hips by continuing to work for employer, before filing a claim and at the time of the filing, American States insured employer; and (2) in finding that employee suffered a compensable occupational disease because the finding is not supported by substantial, competent evidence and employee's work activities were no more than a triggering or precipitating factor with no recognizable link between the disease and some distinctive feature of employee's work, which was common to all jobs of that sort.

### Appeal by Employer and American States Insurance Company

On behalf of employer, American States argues two points on appeal. It argues: (1) the Commission erred when it entered an order in claim number 93–186590, filed in 1995, against American States because American States was not named as a party to the claim and the June 1996, second amended claim, would relate back to the original injuries and dates of diagnosis which occurred before the change in insurance companies; and (2) the Commission erred in affirming a finding that employee sustained an occupational disease related to his work.

### Decision

If the Commission erred in finding liability for a compensable occupational disease, then the awards entered on the second amended claim filed on June 6, 1996 against employer and both insurance companies must be reversed. Accordingly, we first consider the related and comparable arguments made by both insurance companies on the issue of sufficiency of proof to support finding employee's disability was caused by work related disease.

The ALJ and the Commission considered: (1) application of the last exposure rule set out in section 287.063 RSMo 1994; (2) the fact that American States was not named as an insurer in the original, first amended or second amended 1995–1996 claims; (3) whether the allegation of occu-

pational disease in the second amended 1995–1996 claim relates back to either September 1995 or October 1995 because it merely "perfects or amplifies" the earlier claims, or whether the occupational disease claim is a "new and distinct" claim which would not relate back to a prior claim; and (4) whether one or both insurers are liable for the all or part of the required medical care for occupational disease. They noted an employer is only secondarily liable on a compensation claim; the insurer is primarily liable. Section 287.300 RSMo 1994. They also noted Banta & Stude, employer, was at all times insured for worker's compensation liability. They confronted a problem created by the possibility that if the last exposure rule does apply, then Traveler's would be free from liability on the 1995–96 claim but American States may also escape from liability because it was not a party to the 1995–96 claim. How could a fully insured employer be liable on both compensation claims and be denied the benefits of its insurance or the medical expenses for the left hip? Their answer is, there was insurance for both hips because employee's hips were diagnosed and disabling before the 1995 claims were filed. The following includes the ALJ's analysis including the relevant legal authorities and the conclusions.

### Occupational Disease [1]

Section 287.067.1 RSMo 1994 defines occupational disease as:

> an identifiable disease arising with or without human fault out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the diseases follow as an incident of an occupational disease as defined in this section.

Section 287.067.1 RSMo 1994. In 1993, this statute was amended, incorporated in section 287.067.2 RSMo 1994, to provide

---

**1.** We borrow from the ALJ award for this    opinion.

that an occupational disease is compensable

> if it is clearly work related and meets the requirements of an injury which is compensable as provided by subsections 2 and 3 of section 687.020. An occupational disease is not compensable merely because work was a triggering or precipitating factor.

Section 287.067.2 RSMo 1994. Subsection 2 of section 287.020 defines an injury as clearly work related "if work was a substantial factor in the cause of the resulting medical condition or disability." Section 287.020.2 RSMo 1994.

In order to support a finding of occupational disease, employee must provide substantial and competent evidence that he/she has contracted an occupationally induced disease rather than an ordinary disease of life. *Hayes v. Hudson Foods, Inc.*, 818 S.W.2d 296, 299–300 (Mo.App. 1991). The inquiry involves two considerations: (1) whether there was an exposure to the disease which was greater than or different from that which affects the public generally, and (2) whether there was a recognizable link between the disease and some distinctive feature of the employee's job which is common to all jobs of that sort. *Polavarapu v. General Motors Corp.*, 897 S.W.2d 63, 65 (Mo.App. E.D. 1995); *Dawson v. Associated Electric*, 885 S.W.2d 712, 716 (Mo.App. W.D.1994); *Hayes*, 818 S.W.2d at 300; *Sellers v. Trans World Airlines, Inc.*, 752 S.W.2d 413, 415 (Mo.App.1988); *Jackson v. Risby Pallet and Lumber Co.*, 736 S.W.2d 575, 578 (Mo. App.1987).

Claimant must also establish, generally through expert testimony, the probability that the claimed occupational disease was caused by conditions in the work place. *Dawson*, 885 S.W.2d at 716; *Selby v. Trans World Airlines, Inc.*, 831 S.W.2d 221, 223 (Mo.App. W.D.1992); *Brundige v. Boehringer Ingelheim*, 812 S.W.2d 200, 202 (Mo.App.1991). Claimant must prove "a direct causal connection between the conditions under which the work is performed and the occupational disease." *Webber v. Chrysler Corp.*, 826 S.W.2d 51, 54 (Mo.App.1992); *Sellers*, 752 S.W.2d at 416; *Estes v. Noranda Aluminum, Inc.*, 574 S.W.2d 34, 38 (Mo.App. 1978). However, such conditions need not be the sole cause of the occupational disease, so long as they are a major contributing factor to the disease. *Hayes*, 818 S.W.2d at 299; *Sheehan v. Springfield Seed & Floral*, 733 S.W.2d 795, 797–8 (Mo. App.1987). A single medical opinion will support a finding of compensability even where the causes of the disease are indeterminate. *Dawson*, 885 S.W.2d at 716; *Sellers*, 776 S.W.2d at 504; *Sheehan*, 733 S.W.2d at 797. The opinion may be based on a doctor's written report alone. *Prater v. Thorngate, Ltd.*, 761 S.W.2d 226, 230 (Mo.App.1988). Where the opinions of medical experts are in conflict, the fact finding body determines whose opinion is the most credible. *Hawkins v. Emerson Electric Co.*, 676 S.W.2d 872, 877 (Mo.App. 1984). Where there are conflicting medical opinions, the fact finder may reject all or part of one party's expert testimony which it does not consider credible and accept as true the contrary testimony given by the other litigant's expert. *George v. Shop 'N Save Warehouse Foods, Inc.*, 855 S.W.2d 460, 462 (Mo.App. E.D.1993); *Webber*, 826 S.W.2d at 54; *Hutchinson v. Tri–State Motor Transit Co.*, 721 S.W.2d 158, 163 (Mo.App.1986).

As a general rule, disability sustained by the aggravation of a preexisting nondisabling condition or disease caused by a work-related accident is compensable even though the accident would not have produced the injury in a person not having the condition. *Gennari v. Norwood Hills Corporation*, 322 S.W.2d 718, 722–723 (Mo. 1959); *Weinbauer v. Grey Eagle Distributors*, 661 S.W.2d 652, 654 (Mo.App.1983); *Fogelsong v. Banquet Foods Corporation*, 526 S.W.2d 886, 891 (Mo.App.1975); *Mashburn v. Chevrolet—Kansas City Div., G.M. Corp.*, 397 S.W.2d 23, 29 (Mo.App.1965); *Garrison v. Campbell '66' Express, Inc.*,

297 S.W.2d 22, 29 (Mo.App.1956). The Supreme Court's definition of "accident" under *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781, 785 (Mo. banc 1983) has been interpreted to include repetitive trauma. *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781, 785 (Mo.banc 1983); *Kintz v. Schnucks Markets, Inc.*, 889 S.W.2d 121, 123 (Mo.App. E.D.1994); *Sansone v. Joseph Sansone Const. Co.*, 764 S.W.2d 751, 752 (Mo.App. 1989).

■ Aggravation of a preexisting disease or infirmity caused by *nonaccidental conditions* of employment is compensable as either an accident or as an occupational disease. *Smith v. Climate Engineering*, 939 S.W.2d 429, 436 (Mo.App. E.D.1996). Aggravation of a preexisting disease or infirmity caused by *repetitive trauma* is compensable as either an accident or as an occupational disease. *See Id.* at 433–35.

The ALJ and the Commission resolved the dispute between the insurance carriers by an award entered in the 1995–1996 claim ordering each company to pay the medical care expenses for one hip; Traveler's was asked to pay for the replacement of the right hip and American States was ordered to pay for the replacement of the left hip. We have summarized the conclusions of the ALJ, upon which the award is based, as follows:

1. The employer was insured at all times relevant to all the claims. Employer's liability is secondary and indirect while insurer's liability is primary and direct. Thus, if an employer pays a debt for which it is secondarily liable, it is entitled to reimbursement from the insurer.

2. Since employer was a named party on all claims, the insurer, at the relevant time, is also a party because section 287.030.2 provides that an "employer" shall include its insurer. Section 287.030.2 RSMo 1994.

3. It would be an "absurd result" if the 1996 disease claim, as an alternative cause of the 1993 disability affecting both hips, does not relate back to September 1995 which would relieve Traveler's of liability on both hips. It would also be absurd if American States is not liable because it was not expressly named as a party but was the insurer on the date of last exposure.

4. The last exposure rule is set out in section 287.063 RSMo 1994. It provides that an employee is conclusively deemed to have been exposed to the hazards of an occupational disease when a claimant is employed in an occupation or process in which the hazard of the disease exists. The employer liable is the employer during whose employment the claimant was last exposed to the hazard for which the claim is made, regardless of the length of time of such last exposure.

5. The starting point for identifying the employer liable for a particular occupational disease in applying the last exposure rule is "the last employer to expose the employee to the occupational hazard prior to the filing of the claim." *Johnson v. Denton Construction Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995).

6. The analysis of liability of successive employers also governs liability of successive insurers. *Lococo v. Hornberger Elec., Inc.*, 914 S.W.2d 67, 69 (Mo. App.1996); *Oberg v. American Recreational Products*, 916 S.W.2d 304, 306 (Mo.App. E.D.1995); *Feltrop v. Eskens Drywall and Insulation*, 957 S.W.2d 408 (Mo.App. W.D.1997).

7. By relating the June 6, 1996 second amended claim for occupational disease back to September 1995, Traveler's is liable for medical treatment of the right hip and perhaps for the left hip. If the left hip claim does not relate back, then the employer owes for the left hip and has an indemnity claim against its insurer on the date the claim was filed, American States.

8. Allegations of injury from an accident in a claim may be perfected by a subsequent amendment alleging occupa-

tional disease. *Ford v. American Brake Shoe Co.*, 252 S.W.2d 649, 652 (Mo.App. 1952).

9. Employee alleged a right hip disability in the original and first amended 1995 claims.

The left hip allegation in June 1996 may not relate back to 1995, for a 1993 disability, if it alleges a new and distinct injury. *Coloney v. Accurate Superior Scale Co.*, 952 S.W.2d 755, 762 (Mo.App. W.D.1997).

10. Service of the June 6, 1996 second amended claim asserting occupational disease as a cause of 1993 disability of the left hip was sufficient to give the Commission jurisdiction over the employer and its insurer at the time of service, American States. The appearance of the employer in defense of the claim was also an appearance for American States. Sections 287.300 and 287.310 RSMo 1994. Thus, American States was "present" in the 1995–1996 claim and the Commission had jurisdiction to enter an award against it for an occupational disease claim for disease of the left hip first made in June 1996, while it was the insurer.

■ We conclude there was substantial and competent evidence to support the ALJ's findings of fact, adopted by the Commission, that the disease affecting both hips arose out of and in the course of employment. The testimony of orthopedic surgeons reported finding employee: (1) had a predisposition to osteoarthritis; (2) his years of heavy work aggravated the predisposition; (3) the kind and duration of work was more than "a substantial factor" in causing pain and symptoms of osteoarthritis in both hips; and (4) the resulting pain is a factor in determining the necessity for surgery. The Commission adopted the ALJ's finding "that claimant's years of heavy labor at Banta & Stude was a substantial factor in causing him to develop an occupational disease, to-wit: osteoarthritis of both hips." The findings on occupational disease causation are sup-

ported by competent and substantial evidence. *Smith,* 939 S.W.2d at 431. The causation arguments of both insurance companies on compensatory disease requiring medical care are denied.

■ Traveler's second point is the Commission erred when it failed to apply the last exposure rule and determined that all medical care for employee's disease was an obligation of the employer and American States. It contends employee first alleged a claim for occupational disease when he was working for the same employer, but after it had a new insurance carrier. American States responds that there are several reasons it cannot be ordered to provide medical care for the diseased left hip. First, the disease claim filed on June 6, 1996 relates back to the date of the original claim, September 5, 1995, and alleges causation as of December 1993 when Travelers was the insurance carrier. Second, American States was never a party to the 1995–1996 claims.

The law and the facts support American States' position. Both hips were asymptomatic before December 1993. After the accident, employee was disabled and unable to work for several months. He was constantly in pain thereafter, up to and including the time of the hearing. Both hips were diagnosed as diseased before the September 1995 claim was filed. Accordingly, there was a diagnosis of bilateral hip disease and facts to support finding disability of both hips before the original September 1995 claim was filed and prior to the November 1995 change of insurance. The finding of the ALJ and the Commission that years of heavy work accelerated the pathologic progress of the disease applies equally to the condition of both hips on the date employee was first disabled by the disease, December 1993. The evidence will not support a finding that work done after the change in insurance carriers, in November 1995, caused the undisputed need for bilateral hip replacement surgery. The second amended claim was filed in June 1996 and alleged occupational disease

of both hips. In its answer, Traveler's admitted employment, accident, injury to the lower back and the knee, but denied allegations of disease of both hips. It did not allege a statute of limitations defense.

Diagnosis of the condition and the resulting disability were existing facts before the change of carriers. Dr. McAllister, in August 1995, and Dr. Perry, in October 1995, diagnosed hip disease of both hips. Dr. Perry opined that employee's right and left hip "had worsened during the previous year by his heavy work." [2] Employee was off work for two months after December 1993. He was and remains in constant pain which never went away after that date. He was never able to work the same as before December 1993. He slowed down quite a bit; he couldn't do "nowhere near as much." He just kept getting worse from year to year.

The ALJ and the Commission found that the second amended claim related back to the first amended claim but limited relation back to the right hip only. We find no reason to limit relation back to one hip where the issue is the application of the last exposure rule and the statute of limitations is not an issue. In this case, relation back is relevant only to the question of which insurance company is liable for medical care of the left hip. In *Holaus v. William J. Zickell Co.*, 958 S.W.2d 72 (Mo. App. E.D.1997), the trial court rejected relation back because the statute of limitations barred an amended claim filed four and a half years after the previously alleged date of accident. *Holaus v. William J. Zickell Co.*, 958 S.W.2d 72 (Mo.App. E.D.1997). We affirmed. *Holaus* does not stand for the proposition that an amended claim does not relate back to a prior claim made before the employer changed insurance carriers when the only issue is which of two successive insurers is liable on a claim. In *Oberg v. American Recreational Products*, 916 S.W.2d 304 (Mo.App. E.D.1995), we held the successor insurance carrier was liable on a claim of

disease made by an employee where the disease was *diagnosed* before the change of carriers but became disabling after the change of carriers. *Oberg v. American Recreational Products*, 916 S.W.2d 304 (Mo.App. E.D.1995). In *Oberg*, the ALJ found that the work related condition, for which the subsequent carrier was held liable, was not apparent to the employee until after the change of carriers. *Id.* at 305. There was no evidence of disability before the change. *Id.* at 306. We relied on the holding in *Simmerly v. Bailey Corporation*, 890 S.W.2d 12 (Mo.App. S.D. 1994), which cited *King v. St. Louis Steel Casting Co.*, 353 Mo. 400, 182 S.W.2d 560, 562 (Mo.1944), and held the carrier at the time of disability was liable. *Id.* These cases hold that coverage is determined when the employee was last exposed *before disability*. *Simmerly*, 890 S.W.2d at 14. Here, the last exposure with the same employer occurred after both diagnosis and disability.

Employee was injured in 1993. In 1995, he filed claims alleging accident as the cause. In 1996, he amended the 1995 claims alleging accident or disease as the cause. Traveler's, the employer's insurance company in 1993 and at the time of the September and October 1995 claims, answered and defended the amended claims which alleged occupational disease as the cause of disability to both hips. The evidence before the ALJ supported a finding that the disease became disabling and the cause of chronic pain after the December 1993 accident. Prior to the change of insurers from Traveler's to American States, employee's bilateral hip condition was diagnosed and disabling.

Accordingly, we hold that the Commission erred in finding Traveler's not liable for medical care for a diseased left hip and in holding that American States was liable for that case. Traveler's was the carrier at the time of last exposure before diagnosis and disability of osteoarthritis of both

---

**2.** See, summarized finding # 6 of the ALJ in    this opinion.

hips. By amendment, employee's claim was for conditions existing prior to the change of insurance carriers. Section 287.063.2 fixes liability for occupational disease on the employer who last exposed the employee to the hazard for which the claim is made. Section 287.063.2 RSMo 1994. Here, that would be the 1995–1996 claims for the 1993 disability. The claim employee alleged in the 1996 second amended claim is for disability resulting from occupational disease affecting both hips.

We reverse and remand to the Commission to enter an award in favor of the employee and against the employer and Traveler's Property and Casualty Company for all medical expenses associated with bilateral hip replacement. We reverse the award against employer and American States Insurance Company. The motions to dismiss appeal are denied. Appeal costs are assessed against employer and Traveler's.

ROBERT G. DOWD, Jr., J. and LAWRENCE E. MOONEY, J. concur.