Larry DALY, Appellant,

v.

**POWELL DISTRIBUTING, INC.;** Treasurer of the State of Missouri–Custodian of the Second Injury Fund, Respondents.

**Nos. WD 71575, WD 71576.**

Missouri Court of Appeals, Western District.

Sept. 28, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 2010.

Application for Transfer Denied Jan. 25, 2011.

Richard L. Montgomery, Jr., Columbia, for Appellant.

Susan Turner, Jefferson City, MO, for Respondent, Powell.

Jacinda A. Thudium, Jefferson City, MO, for Respondent, Treasurer of State.

Before: VICTOR C. HOWARD, P.J., THOMAS H. NEWTON, and GARY D. WITT, JJ.

THOMAS H. NEWTON, Judge.

Mr. Larry Daly appeals the Labor and Industrial Relations Commission's (Commission) decision denying compensation for

injuries diagnosed after his employment with Powell Distributing (Powell). The Commission disregarded expert testimony that the injuries were work related and denied compensation because medical records failed to corroborate the timing or existence of the injuries. It further denied permanent total disability because it determined the injuries to Mr. Daly's neck and shoulder and his hernia were not compensable. We affirm in part, reverse in part, and remand.

### Factual and Procedural Background

Mr. Daly began working for Powell in October 1995. For a year and a half, he performed maintenance in the warehouse and loaded trucks with cases of soda for route drivers to deliver. Thereafter, he became a route driver and would ordinarily deliver "anywhere from 300 to 400 cases of soda a day."

Unloading the truck involved stepping onto the ledge of the truck; pulling the cases off, starting with "overhead product and then work[ing] down to the bottom"; carrying them on his right shoulder; stepping down off the truck; and putting the cases on a cart. He would then shelve the cases in the stores, which required him to bend and twist. Sometimes he would build displays, which required additional handling of those eight-to twenty-pound cases.

In September 1999, Mr. Daly went to the hospital for increased back pain. Dr. Marvin Mack, a physician at a clinic, told Mr. Daly not to work for a week. Thereafter, Mr. Daly returned to work, but on May 12, 2000, he had to leave after experiencing excruciating back pain. He was diagnosed with preexisting degenerative disc disease and lumbar strain. After

some medical treatment, he was referred to a specialist for surgery. On May 18, 2000, Dr. Randal Trecha performed the back surgery. Mr. Daly did not return to work as a route driver because Powell did not have light duty work.[1]

In October 2000, Mr. Daly filed a workers' compensation claim for lower back injury; Powell and its insurer denied the injury. Mr. Daly attended physical therapy for his back from October 2000 until January 2001. Dr. Trecha specifically recommended additional physical therapy designed to strengthen muscles, known as "work hardening." However, Mr. Daly attended only two sessions because the program was too expensive.[2]

In December 2000, Mr. Daly saw Dr. Douglas Vogt, a general practitioner, for tingling and numbness in his upper extremity. A week later, an MRI was performed to detect suspected stenosis, but the cervical spine appeared relatively normal. In January 2001, Dr. Vogt noted numbness in Mr. Daly's right arm and told him to continue physical therapy. In February 2001, Dr. Vogt reported that Mr. Daly was experiencing "intermittent numbness and tingling in the upper right extremity."

A hardship hearing was held in May 2001 for Mr. Daly's workers' compensation claim for the 1999 lower back injury. Mr. Daly testified that he had pain in his lower back and right arm. Mr. Daly was granted a temporary award for the injury providing disability benefits. From the middle of September 2001 until the middle of November 2001, Mr. Daly attended physical therapy. At the completion of the therapy sessions, Mr. Daly was placed on a

---

1. Dr. Trecha reported that an evaluation recommended that Mr. Daly should only occasionally lift 30 pounds, which is a "medium physical demand level."

2. Because compensation for the back injury is undisputed, we focus only on the evidence concerning the injuries to Mr. Daly's neck, right shoulder, and abdomen.

permanent restriction of "50 pounds occasional" and "40 pounds frequent."

On December 5, 2001, Dr. Vogt referred Mr. Daly to a specialist for suspected stenosis of the cervical spine because the pain in his right arm persisted. On December 18, 2001, Dr. John Miles, a specialist, observed that Mr. Daly was experiencing tremors in his upper right extremity. Dr. Miles referred Mr. Daly to Dr. Bus Tarbox for Mr. Daly's right shoulder pain in January 2002. After a follow-up visit in February 2002, Dr. Tarbox stated that the right shoulder impingement was "resolving" after physical therapy. He opined that Mr. Daly had right shoulder impingement but believed that the pain in the shoulder stemmed from the neck. On February 22, 2002, Dr. Miles observed the tremors and noted another doctor attributed the tremors to the "degenerative change in his neck." The possibility of surgery was noted at that time. Mr. Daly did not return to Dr. Miles until April 2003, and Dr. Miles performed a discectomy and fusion on the cervical spine in June 2003.

In April 2002, Mr. Daly filed a claim for compensation for injuries to his neck, right arm, upper back, and upper extremities. Another hearing was held on October 7, 2008, to determine Powell's "extent and nature of liability" for the compensable lower back injury and to determine whether the other listed injuries were compensable. Mr. Daly claimed that he sustained neck and shoulder injuries from employment but the symptoms occurred during physical therapy for the compensable lower back injury. He also allegedly sustained a hernia injury during physical therapy. Finally, due to the combined injuries, he claimed permanent total disability.

At the hearing, medical records, depositions from experts concerning the nature of the injury, the causation of the injury,

the extent of disability, and Mr. Daly's employability were admitted. Mr. Daly also presented testimony concerning his work history, bodily condition, and limited ability to work.

He testified that in the fall of 2000, he experienced neck pain and noticed tremors in his right hand. Mr. Daly further testified that during the physical therapy program in 2001, he experienced a hernia in the stomach and increased neck pain. Finally, Mr. Daly testified that he had continual pain in his lower back and neck.

The ALJ denied Mr. Daly compensation for the injuries to his abdomen and neck. The ALJ found that the pain in Mr. Daly's arm and the shoulder were more likely attributed to his neck. Thus, we assume that the analysis concerning the neck injury included the shoulder injury. The Commission affirmed the ALJ's decision and incorporated it in its final award. Mr. Daly appeals, raising four points. Mr. Daly argues that the Commission erred in (1) denying causation for injuries to his neck, right shoulder, and abdomen; (2) not awarding permanent disability for his cervical spine, right shoulder, and abdomen; (3) not ordering Powell Distributing to pay for medical expenses incurred from reasonable treatment of those three injuries; and (4) finding that he was not totally and permanently disabled.

## Standard of Review

"Our review of the Commission's decision is governed by article V, section 18, of the Missouri Constitution and section 287.495 RSMo." *Kliethermes v. ABB Power T & D,* 264 S.W.3d 626, 629 (Mo. App. W.D.2008). "[J]udicial review is to be conducted objectively, without viewing the evidence and [accompanying] reasonable inferences ... in the light most favorable to the award." *Id.* at 630. In examining the record, we determine whether

" 'considering the whole record, there is sufficient competent and substantial evidence to support the award.' " *Id.* (citation omitted). "Thus, we look to the whole record in reviewing the [Commission]'s decision, not merely to the evidence that supports its decision." *Id.*; *see also Miller v. Mo. Highway & Transp. Comm'n*, 287 S.W.3d 671, 672 (Mo. banc 2009). We may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds: (1) "the commission acted without or in excess of its power"; (2) "the award was procured by fraud"; (3) "the facts found by the commission do not support the award"; and (4) "there was not sufficient competent evidence in the record to warrant the making of the award." § 287.495.1.

## Legal Analysis

An injury is compensable under Workers' Compensation Law if it results from an accident arising out of and in the course of the claimant's employment. § 287.120.[3] An injury arises out of and in the course of employment when employment is a substantial factor in causing the injury, the injury stems from a natural incident of the work, employment is a proximate cause, and the injury "does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life." § 287.020.3. Degeneration caused by aging is compensable if it stems from an incident of employment. *Id.* Occupational diseases are compensable if "it is clearly work related and meets the requirements of an injury which is compensable." § 287.067. Occupational disease does not include "[o]rdinary diseases of life to which the general public is exposed outside of the employment." *Id.*

The Commission denied compensation, finding that the injuries to the neck and abdomen (hernia) were not caused by Mr. Daly's employment with Powell Distributing. The Commission found that Mr. Daly's hernia was not caused by the work hardening program because the medical records and other evidence did not support it. The Commission found that work was not a substantial factor in causing Mr. Daly's neck injury, which includes the shoulder injury,[4] because the injury manifested after his employment ended. In deciding against a finding of compensable injury, the Commission disregarded expert testimony that all Mr. Daly's injuries were work related. Specifically, the Commission found: "Dr. [Raymond] Cohen's testimony [wa]s not credible ... [because] nothing in the medical records ... indicate that there is the slightest of connection between the cervical neck injury and Claimant's employment. To connect the cervical condition to his employment is a leap of faith."

### The Commission erred in denying causation.

In his first point, Mr. Daly argues that the Commission's erred in finding that his the neck, right shoulder, and abdominal injuries were not work related because the parties stipulated that those injuries arouse out of and in the course of employment. The record shows that the parties

---

3. Because Mr. Daly's injuries arose prior to the 2005 amendments to the Workers' Compensation Law, statutory references are to RSMo 2000, unless otherwise indicated. *See Avery v. City of Columbia*, 966 S.W.2d 315, 321 n. 2 (Mo.App. W.D.1998), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

4. As noted, the Commission found that Mr. Daly's arm and shoulder pain were more likely attributed to the neck.

had a stipulation, but it only concerned the 1999 lower back injury and not the 2000 injuries. The parties stipulated that Powell was operating under Workers' Compensation Law when Mr. Daly "sustained his occupational injuries," and that Mr. Daly gave proper notice of the 1999 injury. Although the record is somewhat unclear on the extent of the stipulation, the confusion was resolved through the ALJ's subsequent questioning. Thus, the Commission's decision did not conflict with the parties' stipulation.

■ Mr. Daly also argues that the Commission erred in finding that his neck, right shoulder, and abdominal injuries were not work related because uncontradicted medical testimony showed causation and no medical expert refuted this evidence. He cites *Merriman v. Ben Gutman Truck Service, Inc.*, 392 S.W.2d 292, 297 (Mo.1965) for support.

■ An injury is compensable as an occupational disease when repetitive trauma has aggravated a preexisting disease. *Kelley v. Banta & Stude Constr. Co.*, 1 S.W.3d 43, 49 (Mo.App. E.D.1999). A claimant alleging aggravation to a preexisting condition must adduce expert testimony of "a direct causal connection between the conditions under which the work is performed and the occupational disease." *Id.* (internal citation and quotation marks omitted) The expert does not have to opine that the work conditions were the sole factor, but only that the work conditions were a substantial contributing factor. *Id.* Even if the causes of the disease are indeterminate, an expert's opinion that work was a substantial contributing factor will support a finding that the injury is compensable. *Id.*

■ Notwithstanding, the Commission has the power to believe or disbelieve an expert's testimony. *Kuykendall v.*

*Gates Rubber Co.*, 207 S.W.3d 694, 711 (Mo.App. S.D.2006). However, disregarding uncontradicted expert's testimony as to causation must be supported by substantial and competent evidence. *Id.* at 712; *see also Wright v. Sports Assoc., Inc.*, 887 S.W.2d 596, 600 (Mo. banc 1994), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). Moreover, "[t]he Commission cannot find there is no causation if the uncontroverted medical evidence is otherwise." *Id.* (internal citation and quotation marks omitted).

At the 2008 hearing, Dr. Cohen testified for Mr. Daly via deposition that Mr. Daly's employment at Powell was a "substantial factor in causing a change in his degenerative spine disease, causing the degenerative spine disease to become clinically symptomatic and to become worse" and that it was necessary to treat the symptoms with surgery on his lumbar spine and cervical spine. Dr. Cohen also testified that the lifting Mr. Daly performed during work hardening caused the hernia. Finally, he testified that the right shoulder impingement syndrome was a result of "cumulative trauma disorder from [unloading the truck, delivering the sodas to the stores, and shelving them]."

The Commission disbelieved Dr. Cohen's opinion because the medical records did not show that the source of the hernia or the cervical spine injury was related to the physical therapy sessions or employment, whereas the medical records showed a connection between employment and the lumbar spine injury. There is no requirement that the medical records report employment as the source of injury. *See Townser v. First Data Corp.*, 215 S.W.3d 237, 242 (Mo.App. E.D.2007) (stating that an expert's written report alone will support a finding of compensability). The law only requires that expert testimony establish a

direct causal connection between employment and injury, which Dr. Cohen provided. Because the medical records did not report a source of injury, they did not contradict Dr. Cohen's testimony.

■ Additionally, the medical records support Dr. Cohen's opinion because the dates and notes on the records show the physical therapy sessions corresponded with Mr. Daly's hernia and his neck injury. The medical records indicated a diagnosis of hernia on December 10, 2001, noting that swelling had started in October 2001 around Mr. Daly's abdomen, and indicated that Mr. Daly was experiencing pain in his right shoulder, right arm, and neck. An employer is liable for an injury sustained during the medical treatment of a compensable injury. *See Lahue v. Mo. State Treasurer*, 820 S.W.2d 561, 563 (Mo.App. W.D.1991).

The Commission also disbelieved Dr. Cohen's opinion that employment was a substantial factor in causing the cervical spine injury and that the injury was manifested during the physical therapy program because the medical records show that Mr. Daly did not complain of the neck injury until December 2001. Specifically, the Commission found: "It does not make sense that Claimant alleges that the cervical pain more or less existed simultaneously to his lumbar injury and yet does not complain of it until months or years later."

First, the finding that Mr. Daly did not complain of the neck pain until December 2001 is not supported by competent and substantial evidence. The Commission found that the pain and numbness in Mr. Daly's right arm and shoulder were related to his neck injury based on medical records. According to those medical records, Mr. Daly reported tingling and numbing in the upper extremity to Dr. Vogt in December 2000. Because the upper extremity included the shoulder and

arm, Mr. Daly initially complained of his neck injury in December 2000, which was during physical therapy to rehabilitate his lower back. Also, contrary to the Commission's findings, Mr. Daly complained of the neck injury at the May 22, 2001 hearing because he complained of pain and numbness in his right arm. Thus, Mr. Daly complained of the neck pain to a doctor a year earlier than the Commission found.

■ Second, the finding that the pain experienced was too remote from employment to be a work-related injury is not supported by competent and substantial evidence. In cases in which expert testimony is needed to establish causation, an ALJ's denial of causation because the onset of symptoms was remote from the exposure to the risk must be supported by expert testimony. *See Townser*, 215 S.W.3d at 243; *see also Wright*, 887 S.W.2d 596 at 600. Although Powell produced expert testimony, through Dr. Robert Heim, that someone injured by employment would experience symptoms earlier than a year and half after employment has ended, this testimony was based on the inaccurate finding that Mr. Daly's complaints began in December 2001. Consequently, Dr. Heim's statement, "because the symptoms—the onset of symptoms were so far remote from the last time [Mr. Daly] worked, it's hard for me to imagine that his work caused his symptoms in his cervical spine," is not competent evidence to support a finding against causation based on remoteness.

Moreover, the Commission disregarded Dr. Heim's testimony because it found that Dr. Heim did not have "the background to adequately evaluate Mr. Daly." For example, initially Dr. Heim was not provided with a description of activities Mr. Daly had performed while working for Powell. However, after being informed that those

duties required lifting twenty to thirty pounds, Dr. Heim opined that such repetitive activities could cause a change in a degenerative condition depending on duration and "how much he was doing it." Because no expert testimony conflicted with Dr. Cohen's testimony supporting a finding of a direct causal connection between the injuries and work, the Commission's decision was not supported by the record. Mr. Daly's first point is granted.[5]

### The Commission erred in denying compensation: disability and medical expenses.

■ In his second and third points, Mr. Daly argues, respectively, that the Commission erred in denying permanent disability for his neck, shoulder, and abdominal injuries, and in failing to order Powell to pay medical expenses incurred from the treatment of these injuries. A claimant is entitled to disability benefits to the extent the compensable injury or occupational disease results in a "loss of suitable, gainful employment." § 287.148. A claimant is also entitled to medical expenses reasonably incurred to cure and treat the effects of the compensable injury or disease. § 287.140; see Meyers v. Wildcat Materials, Inc., 258 S.W.3d 77, 82 (Mo. App. S.D.2008). The Commission did not determine the extent of disability caused by these injuries or the reasonableness of Mr. Daly's medical expenses. Powell asserts that the Second Injury Fund (SIF) is liable for any disability benefits because of the preexisting injury. Powell also asserts that medical expenses should not be paid

because Mr. Daly did not follow statutory procedures. Because we have determined that the injuries above were compensable, these issues are remanded to the Commission. Mr. Daly's second and third points are granted.

### The Commission erred in finding Mr. Daly was not permanently and totally disabled.

■ In his fourth point, Mr. Daly argues that the Commission erred in finding that he was not permanently and totally disabled from his injuries because he found part-time employment at a bank. Mr. Daly argues that experts stated that he was permanently totally disabled and unemployable in the open labor market, and that his employment performing light duty work was obtained through "good fortune" rather than the "open labor market."

The Commission determined that Mr. Daly was not totally and permanently disabled because: Powell's vocational expert testified that Mr. Daly could work at "most limited mobility jobs even with Dr. Cohen's restrictions"; Mr. Daly engaged in everyday activities without assistance; and Mr. Daly had secured meaningful part-time employment with the bank. However, the Commission limited this finding to Mr. Daly's lower back injury. It stated that although Mr. Daly was credible, it did not believe "that his lumbar injury results in a permanent total disability." It further stated that "[s]ince the hernia and cervical spine/injury disease was not caused by [Mr. Daly's] employment with Powell, [he]

<hr/>

5. Mr. Daly also argues that the Commission erred in failing to address his shoulder injury. The injury to his shoulder and whether that injury resulted in permanent disability was listed as a separate issue from the neck injury in the "Disputed Issues" section of the Commission's decision. However, the "Findings of Fact and Rulings of Law" section under the "Award" section listed only cervical spine and hernia as the "[p]art(s) of the body injured by accident or occupational disease." Presumably, the Commission intended the shoulder injury to be included with the neck injury based on medical records as mentioned above. Thus, the Commission did not err.

is not permanently totally disabled under chapter 287."

Because we have concluded that the other injuries were compensable, we remand for a determination of whether Mr. Daly's injuries, including the lower back injury, resulted in Mr. Daly's permanent and total disability and whether SIF is liable. Mr. Daly's fourth point is granted.

### Conclusion

Therefore, we reverse the Commission's decision as to Mr. Daly's neck, right shoulder, and abdominal injuries and as to permanent total disability and remand for further proceedings. Upon remand, the Commission will review the record and address the past medical expenses owed to Mr. Daly and any disability benefits. We affirm the decision in all other respects.

HOWARD, P.J., and WITT, J. concur.